**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **EGL, EAGLE GLOBAL LOGISTICS, LP** | § | |
| **and CEVA FREIGHT LLC,** | § | |
| **Plaintiffs** | § | |
| | § | |
| **V.** | § | **C.A. NO. _____** |
| | § | |
| **NATIONAL LIABILITY & FIRE** | § | |
| **INSURANCE COMPANY and STARR** | § | |
| **MARINE OF CALIFORNIA INSURANCE** | § | |
| **AGENCY,** | § | |
| **Defendants** | § | |

## DEFENDANTS' NOTICE OF REMOVAL

TO THE COURT:

National Liability & Fire Insurance Company (hereinafter "National") and Starr Marine Agency of California d/b/a Starr Marine of California Insurance Agency ("Starr"), Defendants herein, by and through their attorneys of record, Hill Rivkins LLP, who while expressly reserving all issues or questions other than that of removal, file their Notice of Removal on the basis of federal diversity jurisdiction, and in support would respectfully show the Court as follows:

I.

On November 17, 2011, Plaintiffs EGL, Eagle Global Logistics, LP ("EGL") and CEVA Freight LLC ("CEVA") filed this civil action alleging breach of contract in the 61st Judicial District Court of Harris County, Texas, under Cause No. 2011-69838. Plaintiffs demanded a trial by jury in the state court.

II.

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendants hereby remove this action from the 61st Judicial District Court of Harris County, Texas, Cause No. 2011-69838, to this Honorable Court.   Defendants were served with Plaintiffs' Original Petition on March 16, 2012.  Therefore, the Notice of Removal is timely filed within the thirty-day period specified by 28 U.S.C. § 1446(b).

III.

Plaintiff EGL pleads that it is a corporation incorporated under the laws of Delaware with its principal place of business in Houston, Texas. Plaintiff EGL therefore is a citizen of both Delaware and Texas (Plaintiffs' Complaint, par. 2).

Plaintiff CEVA pleads that it is a corporation incorporated under the laws of Delaware with its principal place of business in Houston, Texas. Plaintiff CEVA therefore is a citizen of both Delaware and Texas (Plaintiffs' Complaint, par. 3).

Plaintiffs plead that Defendant National is a corporation incorporated under the laws of Nebraska with its principal place of business in Omaha, Nebraska. Defendant National therefore is a citizen of Nebraska (Plaintiffs' Complaint, par. 4).

Plaintiffs plead that Defendant Starr is a corporation incorporated under the laws of California with its principal place of business in San Francisco, California.  Defendant Starr therefore is a citizen of California (Plaintiffs' Complaint, par. 5).

Plaintiffs' claim exceeds the amount of $75,000.00, exclusive of interest and costs. Plaintiffs affirmatively plead that the amount of their claim is $1,317,578.95 (Plaintiffs' Complaint, par. 16).

IV.

Removal is proper as the District Courts of the United States have original jurisdiction over Plaintiffs' lawsuit against Defendants. The Court has subject-matter jurisdiction under 28 U.S.C. § 1332 as Plaintiffs are diverse in citizenship from both Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

V.

In accordance with 28 U.S.C. § 1446(a) and Local Rule 81, copies of all executed process, pleadings asserting causes of action, all orders signed by the state judge, and the docket sheet are attached. An Index of Matters Being Filed and List of All Counsel of Record are filed contemporaneously with the Notice of Removal.

VI.

In accordance with 28 U.S.C. § 1446(d), written notice of the filing of the Notice of Removal will be promptly given to all parties, the District Clerk of Harris County, Texas, and the Clerk of the United States District Court for the Southern District of Texas, Houston Division.

VII.

Defendants respectfully pray that the state court action be removed to this Court and placed on the Court's docket for further proceedings, and for such other and further relief to which Defendants may show themselves justly entitled.

Respectfully submitted,

_____
STEVEN P. VANGEL
SDTX I.D. No. 4065
Texas Bar No. 20465800
ROBERT G. MOLL
SDTX I.D. No. 15213
Texas Bar No. 00784622
HILL RIVKINS LLP
55 Waugh Drive, Suite 1200
Houston, Texas 77007
Telephone:     713/457-2286
Telefax:       713/222-1359

ATTORNEYS FOR DEFENDANTS
NATIONAL LIABILITY & FIRE
INSURANCE COMPANY and STARR
MARINE OF CALIFORNIA INSURANCE
AGENCY

## Certificate of Service

On this 2nd day of April, 2012, a true and correct copy of the foregoing was duly served by certified mail, return receipt requested, to Rick H. Rosenblum, Esq. and Andrew R. Casillas, Esq., AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., 300 Convent Street, Suite 1600, San Antonio, Texas 78205.

_____

CAUSE NO. 2011-69838

| | | |
|---|---|---|
| EGL, EAGLE GLOBAL LOGISTICS, LP and CEVA FREIGHT LLC, | § | IN THE DISTRICT COURT |
| **Plaintiffs** | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY and STARR MARINE OF CALIFORNIA INSURANCE AGENCY, | § | |
| **Defendants** | § | 61st JUDICIAL DISTRICT |

## DEFENDANTS' NOTICE OF FILING OF REMOVAL

TO:   Plaintiffs, EGL, Eagle Global Logistics, LP and CEVA Freight, LLC, by and through their attorneys of record, Rick H. Rosenblum, Esq. and Andrew R. Casillas, Esq., AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., 300 Convent Street, Suite 1600, San Antonio, Texas 78205.

You are hereby notified that on the 2nd day of April, 2012, Defendants herein filed in the United States District Court for the Southern District of Texas, Houston Division, their Notice of Removal, a copy of which is attached and incorporated by reference herein, for the purpose of removing this case to federal court. Defendants have filed with the District Clerk of Harris County, Texas, a copy of their Notice of Removal, thereby removing this action.

Respectfully submitted,

_____
STEVEN P. VANGEL
Texas Bar No. 20465800
ROBERT G. MOLL
Texas Bar No. 00784622
HILL RIVKINS LLP
55 Waugh Drive, Suite 1200
Houston, Texas 77007
Telephone:    713/457-2286
Telefax:       713/222-1359

ATTORNEYS FOR DEFENDANTS
NATIONAL LIABILITY & FIRE
INSURANCE COMPANY and STARR
MARINE OF CALIFORNIA INSURANCE
AGENCY

## Certificate of Service

On this 2nd day of April, 2012, a true and correct copy of the foregoing was duly served by certified mail, return receipt requested, to Rick H. Rosenblum, Esq. and Andrew R. Casillas, Esq., AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., 300 Convent Street, Suite 1600, San Antonio, Texas 78205.

_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **EGL, EAGLE GLOBAL LOGISTICS, LP** | § | |
| **and CEVA FREIGHT LLC,** | § | |
| **Plaintiffs** | § | |
| | § | |
| **V.** | § | **C.A. NO. _____** |
| | § | |
| **NATIONAL LIABILITY & FIRE** | § | |
| **INSURANCE COMPANY and STARR** | § | |
| **MARINE OF CALIFORNIA INSURANCE** | § | |
| **AGENCY,** | § | |
| **Defendants** | § | |

## INDEX OF MATTERS BEING FILED

1. Notice of Removal

2. Notice of Filing Removal (state court)

3. Index of Matters Being Filed

    A. Executed Service of Process

        National Liability & Fire Insurance Company

        Starr Marine of California Insurance Agency

    B. Pleadings

        Plaintiffs' Original Petition.

    C. State Court Orders

        Notice of Intent to Dismiss – No Answer Filed

    D. State Court Docket Sheet

4. List of All Counsel of Record

Respectfully submitted,

_____
STEVEN P. VANCEL
SDTX I.D. No. 4065
Texas Bar No. 20465800
ROBERT G. MOLL
SDTX I.D. No. 15213
Texas Bar No. 00784622
HILL RIVKINS LLP
55 Waugh Drive, Suite 1200
Houston, Texas 77007
Telephone:     713/457-2286
Telefax:         713/222-1359

ATTORNEYS FOR DEFENDANTS
NATIONAL LIABILITY & FIRE
INSURANCE COMPANY and STARR
MARINE OF CALIFORNIA INSURANCE
AGENCY

**Certificate of Service**

On this 2nd day of April, 2012, a true and correct copy of the foregoing was
duly served by certified mail, return receipt requested, to Rick H. Rosenblum, Esq. and
Andrew R. Casillas, Esq., AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., 300
Convent Street, Suite 1600, San Antonio, Texas 78205.

_____

RECEIPT NUMBER 72782944 ... TRACK# ... CIV

CAUSE NUMBER  201169838

| | |
|---|---|
| **PLAINTIFF:** EGL EAGLE GLOBAL LOGISTICS LP | In The   61st |
| vs. | **Judicial District Court of** |
| **DEFENDANT:** NATIONAL LIABILITY & FIRE INSURANCE COMPANY | **Harris County, Texas** |

### CITATION CORPORATE

THE STATE OF TEXAS
County of Harris

TO: NATIONAL LIABILITY & FIRE INSURANCE COMPANY (A NEBRASKA CORPORATION)
BY SERVING THEIR ATTORNEY FOR SERVICE WILLIAM T ELLIS JR

3333 LEE PARKWAY SUITE 200  DALLAS TX 75219

Attached is a copy of  PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on the ___17th___ day of ___November___, 20 _11_, in the above cited cause number and court. The instrument attached describes the claim against you.

   **YOU HAVE BEEN SUED**; you may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of 20 days after you were served this citation and petition, a default judgment may be taken against you.

TO OFFICER SERVING:

   This Citation was issued under my hand and seal of said Court, at Houston, Texas, this ___16th___ day of ___March___, 20 _12_.

Issued at request of:
ROSENBLUM, RICKY H.
300 CONVENT ST 1600
SAN ANTONI, TX 78205
Tel: (210) 281-7000
Bar Number:  17276100

*Chris Daniel*
**CHRIS DANIEL, District Clerk**
Harris County, Texas
**201 Caroline, Houston, Texas 77002**
**P.O. Box 4651, Houston, Texas 77210**

Generated by: JOHNSON, CHARLETA MA    YS9/U1K/9243

### OFFICER/AUTHORIZED PERSON RETURN

I received this citation on the _____ day of _____, 20____, at _____ o'clock ____.M., endorsed the date of delivery thereon, and executed it at _____
(street address)                                         (city)

in _____ County, Texas on the _____ day of _____, 20____, at _____ o'clock ____. M., by delivering to _____, by delivering to its
(the defendant corporation named in citation)

_____, in person, whose name is _____.
(registered agent, president, or vice-president)

a true copy of this citation, with a copy of the _____ Petition attached,
(description of petition, e.g., "Plaintiffs Original")

and with accompanying copies of _____
(additional documents, if any, delivered with the petition)

I certify that the facts stated in this return are true by my signature below on the _____ day of _____, 20____.

FEE: $ _____          By: _____
                              (signature of officer)
                         Printed Name: _____

                         As Deputy for: _____
_____                    (printed name & title of sheriff or constable)
Affiant Other Than Officer

On this day, _____, known to me to be the person whose signature appears on the foregoing return, personally appeared. After being by me duly sworn, he/she stated that this citation was executed by him/her in the exact manner recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME, on this _____ day of _____, 20 ____

_____
Notary Public

N.INT CITC.P

RECEIPT NUMBER  14447        0.00
TRACKING NUMBER  72762341    CIV

CAUSE NUMBER   201169838

| | |
|---|---|
| PLAINTIFF:  EGL EAGLE GLOBAL LOGISTICS LP<br>         vs.<br>DEFENDANT:   NATIONAL LIABILITY & FIRE INSURANCE COMPANY | In The   61st<br>Judicial District Court of<br>Harris County, Texas |

## CITATION CORPORATE

THE STATE OF TEXAS
County of Harris

TO: STARR MARINE OF CALIFORNIA INSURANCE AGENCY (A CALIFORNIA CORPORATION)
    BY SERVING ITS REGISTERED AGENT C T CORPORATION SYSTEM

    350 N ST PAUL STREET SUITE #2900  DALLAS TX 75201

    Attached is a copy of   PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on the ____17th____ day of ____November____, 20 _11_, in the above cited cause number and court. The instrument attached describes the claim against you.

   **YOU HAVE BEEN SUED;** you may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of 20 days after you were served this citation and petition, a default judgment may be taken against you.

TO OFFICER SERVING:

   This Citation was issued under my hand and seal of said Court, at Houston, Texas, this ___16th___ day of
_____March_____, 20 _12_.

Issued at request of:
ROSENBLUM, RICKY H.
300 CONVENT ST 1600
SAN ANTONI, TX 78205
Tel: (210) 281-7000
Bar Number:  17276100

*Chris Daniel*
**CHRIS DANIEL, District Clerk**
Harris County, Texas
**201 Caroline, Houston, Texas 77002**
**P.O. Box 4651, Houston, Texas 77210**

Generated by: JOHNSON, CHARLETA MA    YS9/U1K/9243

### OFFICER/AUTHORIZED PERSON RETURN

I received this citation on the _____ day of _____, 20____, at _____ o'clock ____.M., endorsed the date of delivery thereon, and executed it at _____, _____
                                                                                (street address)                    (city)
in _____ County, Texas on the _____ day of _____, 20___, at _____ o'clock __. M.,
by delivering to _____, by delivering to its
                         (the defendant corporation named in citation)
_____, in person, whose name is _____,
(registered agent, president, or vice-president)
a true copy of this citation, with a copy of the _____ Petition attached,
                                              (description of petition, e.g., "Plaintiffs Original")
and with accompanying copies of _____
                                      (additional documents, if any, delivered with the petition)
I certify that the facts stated in this return are true by my signature below on the _____ day of _____, 20___.
FEE: $ _____              By: _____
                                        (signature of officer)
                            Printed Name: _____

                            As Deputy for: _____
_____                  (printed name & title of sheriff or constable)
Affiant Other Than Officer

On this day, _____, known to me to be the person whose signature appears on the foregoing return, personally appeared. After being by me duly sworn, he/she stated that this citation was executed by him/her in the exact manner recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME, on this _____ day of _____, 20 _____

                                              _____
                                                    Notary Public

N.INT.CITC.P

**2011-69838 / Court: 061**

Filed 11 November 17 A11:58
Chris Daniel - District Clerk
Harris County
ED101J016598628
By: Sharon Carlton

CAUSE NO. _____

| | | |
|---|---|---|
| EGL, EAGLE GLOBAL LOGISTICS, LP, | § | |
| CEVA FREIGHT LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ____ JUDICIAL DISTRICT |
| | § | |
| NATIONAL LIABILITY & FIRE | § | |
| INSURANCE COMPANY , | § | |
| STARR MARINE OF | § | |
| CALIFORNIA INSURANCE AGENCY | § | |
| | § | |
| Defendants. | § | HARRIS COUNTY, TEXAS |

---

**PLAINTIFFS' ORIGINAL PETITION**

---

**TO THE HONORABLE JUDGE OF THE COURT:**

EGL, Eagle Global Logistics, LP ("EGL"), and CEVA Freight LLC (collectively, "CEVA") file this Original Petition against Defendants National Liability & Fire Insurance Company ("National Liability") and Starr Marine of California Insurance Agency ("Starr") and alleges as follows:

**I.    DISCOVERY-CONTROL PLAN**

1.      CEVA intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.3 because it seeks monetary relief aggregating more than $50,000.00.

**II.    PARTIES**

2.      EGL is a Delaware corporation whose principal place of business is located at 15350 Vickery Drive, Houston Texas 77032. EGL is authorized to do business in the State of Texas.

1

101524941

3.     CEVA is a Delaware corporation whose principal place of business is located at 15350 Vickery Drive, Houston Texas 77032. CEVA is authorized to do business in the State of Texas.

4.     National Liability is a Nebraska corporation whose principal place of business is at 3024 Harney Street, Omaha, NE 68131. National Liability may be served with process by serving their attorney for service, William T. Ellis, Jr., 3333 Lee Parkway, Suite 200, Dallas, Texas 75219.

5.     Starr is a California corporation whose principal place of business is at 101 Second Street, 25th Floor, San Francisco, CA 94105. Starr may be served with process by serving C.T. Corporation System, 350 North Saint Paul Street, Dallas, Texas 75201.

## III.     JURISDICTION AND VENUE

6.     Subject matter jurisdiction is proper in this Court. The Court has personal jurisdiction over the Defendants because this action arose out of acts committed in whole or in part in Texas. Specifically, Defendants purposely availed themselves of the privileges and benefits of conducting business in Texas by contracting with a corporation whose principal place of business is in Texas, by agreeing to perform the contract in whole or in part in Texas, and by direct oral and written communications relating to the facts underlying this lawsuit to the Plaintiffs located in Texas. Thus, the non-resident Defendants are amenable to process under Texas' long-arm statute. Tex. Civ. Prac. & Rem. Code § 17.042.

7.     On information and belief, National Liability regularly conduct and transacts business in Texas, and within Houston, Harris County, Texas, itself or through one or more subsidiaries, affiliates, business divisions, or business units.

8.     On information and belief, Starr regularly conduct and transacts business in Texas, and within Houston, Harris County, Texas, itself or through one or more subsidiaries, affiliates, business divisions, or business units.

9.     Venue is proper in Houston, Harris County, Texas under Tex. Civ. Prac. & Rem. Code § 15.002 because all or a substantial part of the events or omissions occurred in Harris

2

County, Texas. Specifically, the contract between the parties was reviewed, discussed, and executed in Houston, Harris County, Texas.

## IV.  CONDITIONS PRECEDENT

10.   CEVA has performed all conditions precedent to its recovery of damages in this matter.

## V.  FACTUAL BACKGROUND

11.   On June 4, 2007, National Liability issued a Marine Policy Number CSF00022USA1 (the "Policy")[1] to EGL Eagle Global Logistics, Inc.,[2] a shipping and logistics company.  In November 2007, CEVA acquired the insured entity, along with all of its assets, including the Policy.[3] The Policy and its endorsements covered CEVA against various risks more particularly described therein for the policy period running from April 1, 2007 to April 1, 2010. Among other things, the Policy also authorized CEVA to bind shippers insurance on behalf of National Liability, thereby procuring insurance coverage for shipments of cargo owned by customers of CEVA that engaged CEVA to ship that cargo. The Policy also covered CEVA against claims made by others arising from CEVA's alleged liability for damage or loss to goods of those claimants while in CEVA's control.

12.   On or about July 15, 2004, CEVA and Apple Computer, Inc. ("Apple") entered into a Statement of Work for Latin America Finished Goods Distribution (the "SOW"). This SOW set forth the agreement between CEVA and Apple regarding international transportation, warehousing, and other logistical services provided by EGL to Apple in Latin America, including Mexico.[4]

13.   According to the terms of the SOW, Apple had the right to elect "Full Replacement Cost" insurance coverage for items shipped with CEVA. If Apple elected for Full

---

[1] A complete copy of the Policy and its endorsements are attached as Exhibit A.
[2] The correct name of the insured entity was EGL, Eagle Global Logistics, LP.
[3] For purposes of convenience, the term "CEVA" shall include all EGL entities, including the insured entity.
[4] A complete copy of the SOW is attached as Exhibit B.

3

101524941

Replacement Cost insurance, CEVA then charged Apple, on a shipment-by-shipment basis, an extra thirty-three cents per kilo of cargo.

14.     On October 17, 2007, Apple shipped approximately $1.3 million of its products to Mexico City using CEVA's services in accordance with the terms of the SOW.  Prior to the commencement of the shipment, Apple elected for Full Replacement Cost to insure the goods, and CEVA billed Apple for their insurance. Apple paid these charges. Subsequently, the shipment of Apple products was hijacked in Mexico City. CEVA promptly notified Starr of the incident.

15.     Subsequent to receiving notification of the hijacking, Starr sought information from CEVA and Apple relating to the hijacking event, and that information was provided to Starr. Starr, however, never issued payment for the loss. Moreover, Starr never explained the basis for its failure to comply with the Policy nor did Starr even so much as deliver a reservation of rights letter.

16.     Starr's failure to protect CEVA or honor its obligations left CEVA in an untenable situation *vis a vis* Apple, which had elected and paid for Full Replacement Cost coverage and demanded the insurance protection paid for. Accordingly, CEVA paid Apple $1,317,578.95, which was the Full Replacement Cost value applicable for the hijacked cargo.

17.     To date, Starr has yet to respond to or resolve CEVA's claim.

## VI.     CAUSES OF ACTION

### *Breach of Contract*

18.     CEVA incorporates and re-alleges the foregoing paragraphs by reference.

19.     Defendants breached the terms of the Policy by refusing to honor CEVA's rightful claim and reimburse CEVA for its payment to Apple.

20.     Defendants breach caused CEVA to suffer in damages in an amount within this Court's jurisdictional limits.

21.     CEVA is also entitled to recover its attorney's fees incurred in connection with this claim under Tex. Civ. Prac. & Rem. Code § 38.001.

101524941

*Equitable Subrogation*

22.     Alternatively, CEVA incorporates the foregoing by reference for all purposes.

23.     CEVA paid a debt to or demand made by Apple that in equity and good conscience should have been paid by Defendants.

24.     As Defendants failed to honor their obligations, CEVA, for its own protection, found it necessary to pay the debt to or demand by Apple for which Defendants were liable.

25.     CEVA was not a volunteer in any respect.

## VII.     JURY DEMAND

26.     CEVA demands a jury trial and tenders the appropriate fee with this petition.

## VIII.     PRAYER

WHEREFORE, CEVA respectfully requests that the Court award CEVA its damages, as well as its reasonable and necessary attorney's fees, prejudgment and post-judgment interest as permitted by law, and its costs as herein demanded, as well as any other relief to which it may be justly entitled, at law or in equity.

101524941

Respectfully submitted,

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
300 Convent Street, Suite 1600
San Antonio, Texas  78205
Telephone:  (210) 281-7000
Telecopier:  (210) 224-2035


RICK H. ROSENBLUM
State Bar No. 17276100
ANDREW R. CASILLAS
State Bar No. 24031443


ATTORNEYS FOR PLAINTIFFS
EGL, EAGLE GLOBAL LOGISTICS, LP,
CEVA FREIGHT LLC

6

101524941

2011-69838 / Court: 061

# Exhibit A

Unofficial Copy Office of Chris Daniel District Clerk

# INSURANCE POLICY SUMMARY

# PREPARED BY AON – SAN FRANCISCO

Unofficial Copy Office of Chris Daniel District Clerk

| | **Marine Open Policy** | |
| --- | --- | --- |
| | **Summary of Insurance** | 6/7/2007 |

**Named Insured:**   EGL Eagle Global Logistics, Inc.

**Policy Period:**   April 1, 2007 to April 1, 2010

**Policy Forms:**   Shippers Interest, Customer Storage Insurance, Cargo Legal Liability, Warehouseman's Legal Liability, Freight Forwarder's Errors & Omissions Liability, Annual aggregate Limits, S.R.& C.C. Endt. (Form 11) and War Risk Open Policy

**Goods Insured:**   Upon lawful shipments of goods and merchandise suitably packed for export, consisting principally of general merchandise

**Geographical Limits:**   At and from ports and/or places in the World to ports and/or places in the World direct or via other ports and/or places, with privilege of transshipment by land and/or water, but excluding any coverage that is prohibited by the AIMU U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE

**Limit of Liability:**   Assurers shall not be liable for more than a maximum of $40,000,000, but not more than the following sub-limits:

**Section I(a) Shippers Interest Insurance**
1. $30,000,000 for all losses and/or claims and/or expenses arising from a single occurrence, but not more than shown in the following sub-limits, unless expressly agreed in writing prior to attachment of risk
2. $ 7,500,000 any certificate to be issued on **Starrmarine.com**
3. $ 7,500,000 any shipment to be insured under contract or insured bill of lading or insured waybill or insured transit document. Any request for increased limit must be accompanied by particulars, including a copy of the subject contract if any

**Section I(b) Customer Storage Insurance**
1. $30,000,000 any one location for all losses and/or claims and/or expenses arising from a single occurrence, nor for more than shown in the following sub-limits, unless expressly agreed in writing prior to attachment of risk

This insurance summary is furnished to you as a matter of information for your convenience. It only summarizes the listed policy(ies) and is not intended to reflect all the terms and conditions or exclusions of such policy(ies). Moreover, the information contained in this summary reflects coverage as of the effective date(s) of the policy(ies) and does not include subsequent changes. This summary is not an insurance policy and does not amend, alter or extend the coverage afforded by the listed policy(ies). The insurance afforded by the listed policy(ies) is subject to all the terms, exclusions and conditions of such policy(ies). For more detailed information, please consult your policy(ies) or call: Tom Pfister (415) 486-7274 or Annette Ing-Firmeza (415) 486-7275. Aon Risk Services in San Francisco, CA License No. 00363334

Edition Date: 10/95

**Marine Open Policy**
**Summary of Insurance**                                                    6/7/2007

2. $ 7,500,000 any one location for the account of any one customer.  Any requests for increased limit must be accompanied by particulars, including a copy of the subject contract, if any

### Section II(a) Cargo Legal Liability
1. $30,000,000 for all losses and/or claims and/or expenses, including defense costs, arising from a single occurrence, but not more than shown in the following sub-limits, unless expressly agreed in writing prior to attachment of risk
2. $ 7,500,000 any one declaration of value
3. $      25,000 any one shipment of jewelry
4. $    100,000 any one shipment of professionally crated, household goods and personal effects of Military Personnel
5. $      50,000 any one shipment, but not more than $ 2,500,000 in the annual aggregate in respect of the consequential loss provisions within International Convention or National Law (clause 3 of Cargo Legal Liability)

### Section II(b) Warehouseman's Legal Liability
1. $30,000,000 any one location
2. $ 7,500,000 any one declaration of value
3. $      25,000 any one shipment of jewelry
4. $    100,000 any one shipment of professionally crated, household goods and personal effects of Military Personnel
5. $      50,000 any one shipment, but not more than $ 2,500,000 in the annual aggregate in respect of the consequential loss provisions within International Convention or National Law (clause 3 of Cargo Legal Liability)

### Section III Freight Forwarder's Errors & Omissions Liability
1. $3,000,000 any one incident or occurrence, including defense costs

This insurance summary is furnished to you as a matter of information for your convenience.  It only summarizes the listed policy(ies) and is not intended to reflect all the terms and conditions or exclusions of such policy(ies).  Moreover, the information contained in this summary reflects coverage as of the effective date(s) of the policy(ies) and does not include subsequent changes.  This summary is not an insurance policy and does not amend, alter or extend the coverage afforded by the listed policy(ies).  The insurance afforded by the listed policy(ies) is subject to all the terms, exclusions and conditions of such policy(ies).  For more detailed information, please consult your policy(ies) or call: Tom Pfister (415) 486-7274 or Annette Ing-Firmeza (415) 486-7275.  Aon Risk Services in San Francisco, CA
License No. 00363334

Edition Date:  10/98

Unofficial Copy Official Record of District Clerk

| Marine Open Policy | |
|---|---|
| Summary of Insurance | 6/7/2007 |

### Annual Aggregate Limits

1. $20,000,000 any one occurrence in respect to Earthquake Shock, in respect of Section I(b) Customer Storage Insurance and Sections II(b) Warehouseman's Legal Liability, either or both combined.
2. $30,000,000 in the Annual Aggregate for the perils of Flood and Windstorm, both perils combined, in respect of Section I(b) Customer Storage Insurance and Section II(b) Warehouseman's Legal Liability, either or both combined.
3. $100,000 in the Annual Aggregate, applicable to Clause 4) Fines and Penalties of Section III, Freight Forwarder's Errors & Omissions Liability.

### War Risk Open Policy (Cargo), CSF00022USA1WR

1. 30,000,000 by any one vessel, nor for more than $30,000,000 by any one aircraft

**Notwithstanding any of the foregoing, nothing shall operate to increase the $40,000,000 maximum limit of liability on account of all losses and/or claims and/or expenses, including defense costs, arising from a single occurrence, all coverages combined.**

**Valuation:**

(a) valued at amount of declared, as reflected in Certificate, but in no event for more than the amount of invoice, including all charges included in the invoice and including prepaid or advance freight and/or freight payable "vessel lost or not lost", not included in the charges included in the invoice, plus 20% nor in any event for more than the applicable limit of liability of this policy; or,

(b) Valued at the amount established in written contract, but in no event for more than the amount of invoice, including all charges included in the invoice and including prepaid or advance freight and/or freight payable "vessel lost or not lost", not included in the charges included in the invoice, plus 20%, nor in the event for more than applicable limit of liability of this policy;

(c) In the absence of an invoice, where an invoice would have been required to establish valuation, then valued at

This insurance summary is furnished to you as a matter of information for your convenience. It only summarizes the listed policy(ies) and is not intended to reflect all the terms and conditions or exclusions of such policy(ies). Moreover, the information contained in this summary reflects coverage as of the effective date(s) of the policy(ies) and does not include subsequent changes. This summary is not an insurance policy and does not amend, alter or extend the coverage afforded by the listed policy(ies). The insurance afforded by the listed policy(ies) is subject to all the terms, exclusions and conditions of such policy(ies). For more detailed information, please consult your policy(ies) or call: Tom Pfister (415) 486-7274 or Annette Ing-Firmeza (415) 486-7275. Aon Risk Services in San Francisco, CA License No. 00363334

Edition Date: 10/98

Unofficial Copy Office of Harris County

**Marine Open Policy**
**Summary of Insurance**                                        6/7/2007

Actual Cash Value, with due deduction for depreciation, on the date and place of loss;
(d) Notwithstanding the foregoing, negotiable instruments shall be valued at the cost of reconstruction only, but in no event for more than the applicable limit of liability of this policy.

Foreign currency is to be converted into United States currency at Banker's sight rate of exchange on the date of issuance of each invoice and/or credit and/or draft.

**Deductibles:**                 Each claim for loss or damage shall be adjusted separately and from the amount of each separately adjusted claim the sum of $5,000 shall be deducted.
In respect of consequential loss, it is further understood and agreed that the Assured shall bear a deductible of $20,000 each and every occurrence.
Freight Forwarders Errors & Omissions deductible of $125,000 per incident or occurrence.

**Conveyances:**                 (a) Per iron and/or steel steamer or steamers and/or iron and/or steel vessel or vessels propelled by power (excluding sailing vessels, with or without auxiliary power, except as connecting conveyances) and connecting conveyances; (b) by aircraft and connecting conveyances; (c) by truck, trailer or rail car.
**Notwithstanding the foregoing, EXCLUDING barge or barges, except as connecting conveyances**

**Special Conditions, Warranties or Other Requirements:**
**This policy covers automatically on all lawful shipments and static risks that come within its scope. Coverage against all risks of physical loss or damage from any external cause, irrespective of percentage.  Used goods and/or used merchandise and/or used equipment are insured and also to cover theft, pilferage or non-delivery. To cover Assured's legal liability loss or damage to goods stored which may reasonably be attributed to fire, lightning, sprinkler leakage, cyclones, hurricanes, earthquakes, floods (meaning the rising of navigable waters) and/or collapse or subsidence of loading docks and also if any, for theft.**

This insurance summary is furnished to you as a matter of information for your convenience.  It only summarizes the listed policy(ies) and is not intended to reflect all the terms and conditions or exclusions of such policy(ies).  Moreover, the information contained in this summary reflects coverage as of the effective date(s) of the policy(ies) and does not include subsequent changes.  This summary is not an insurance policy and does not amend, alter or extend the coverage afforded by the listed policy(ies).  The insurance afforded by the listed policy(ies) is subject to all the terms, exclusions and conditions of such policy(ies).  For more detailed information, please consult your policy(ies) or call: Tom Pfister (415) 466-7274 or Annette Ing-Firmeza (415) 466-7275.  Aon Risk Services in San Francisco, CA License No. 00363334

Edition Date:  10/98

| | |
|---|---|
| **Marine Open Policy** | |
| **Summary of Insurance** | 8/7/2007 |

**Coverage Highlights:**
<u>Includes</u>

- Difference in Conditions & Amounts – Admitted Policies
- Goods Insured and Certain Restrictions
- Shipments Under Refrigeration
- Marine Extension Clause
- Import Duty
- International Convention or National Law
- Warehouse to Warehouse
- S.R.C.C. Endorsement Form No. 11
- War Risks
- Endt. 1 – Cargo Liability Filings
- Endt. 2 –  Multi-Year Agreement

**Premium:**  $2,400,000, flat annual, payable in quarterly installments of $600,000.

**Cancellation Notice:**  Subject to sixty (60) days written Notice of Cancellation by either party for Marine Risks.

Subject to forty-eight (48) hours written or telegraphic Notice of Cancellation by either party for War Risks, Strikes, Riots and Civil Commotions.

Ten (10) Days written notice of cancellation for non-payment of premium

**Security:**  100% National Liability & Fire Insurance Company through Starr Marine of California Insurance Agency, Policy nos. CSF0022USA1 andCSF0022USA1WR

This insurance summary is furnished to you as a matter of information for your convenience.  It only summarizes the listed policy(ies) and is not intended to reflect all the terms and conditions or exclusions of such policy(ies).  Moreover, the information contained in this summary reflects coverage as of the effective date(s) of the policy(ies) and does not include subsequent changes.  This summary is not an insurance policy and does not amend, alter or extend the coverage afforded by the listed policy(ies).  The insurance afforded by the listed policy(ies) is subject to all the terms, exclusions and conditions of such policy(ies).  For more detailed information, please consult your policy(ies) or call: **Tom Pfister (415) 486-7274 or Annette Ing-Firmeza (415) 486-7275.  Aon Risk Services in San Francisco, CA License No. 00363334**

Edition Date: 10/96

# MARINE POLICY

# POLICY NUMBER CSF00022USA1

Unofficial Copy Office of Chris Daniel District Clerk

ORIGINAL

Renewal of:    __New__                                      Policy No.:  CSF00022USA1

# NATIONAL LIABILITY & FIRE INSURANCE COMPANY

Stamford, Connecticut

Starr Marine Agency of California doing business in California

Starr Marine of California Insurance Agency

101 Second Street, San Francisco, CA 94105

Amount:    __$Per Policy__              Rate:  __vrs.__        Premium: __$Per Policy__

Commission: __3.00%__

## BY THIS POLICY OF INSURANCE

Does Insure:    **EGL Eagle Global Logistics Inc., 15350 Vickery Dr., Houston, TX 77032**

For the account of:  **THEMSELVES**

Loss, if any, payable to:  **ASSURED OR ORDER**

To the Amount of:    Per Policy Limits of Liability            Dollars

From:  April 1, 2007            To: April 1, 2010

On:    This Policy covers automatically on all lawful shipments and static risks that come within its scope.

Subject to all of the terms, conditions and exclusions of the form(s) attached hereto:

**Policy Declarations**
Section I(a)    Shippers Interest Insurance
Section I(b)    Customer Storage Insurance
Section II(a)   Cargo Legal Liability
Section II(b)   Warehouseman's Legal Liability
Section III Freight Forwarders Errors & Omissions Liability
S.R.&C.C. Endorsement (March 1, 2002 – Form 11)
War Risks (American Institute Clauses December 2, 1993
Endorsement No. 1 - Cargo Liability Filings
Endorsement No. 2 - MULTI-YEAR AGREEMENT

THIS POLICY IS MADE AND ACCEPTED SUBJECT TO the conditions which are hereby specifically referred to and made part of this Policy, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto; and no officer, agent or other representative of this Company shall have power to waive or be deemed to have waived any provision or condition of this Policy unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this Policy exist or be claimed by the Assured unless so written or attached.
   In Witness Whereof, the Company has caused this Policy to be signed by its President and Secretary, but it shall not be valid unless countersigned by a duly authorized representative of the Company.

1

ORIGINAL

Secretary                     President

By: _____

Countersigned   San Francisco, CA
This 4th day of June, 2007

Authorized Representative
Starr Marine Agency of California doing business in California as
Starr Marine of California Insurance Agency

Unofficial Copy Office of Chris Daniel District

2

ORIGINAL

## POLICY DECLARATIONS

Unless otherwise specified in Policy Declarations, these Policy Declarations apply over all Sections of this Marine Open Policy Number CSF00022USA1 and, where applicable, to the War Risk Open Policy Number CSF00022USA1WR, where not otherwise found to be in conflict with any provision(s) of any Section(s).  It is understood and agreed that the terms and conditions of the respective Sections of this Policy shall govern in the event of a conflict with the terms and conditions of these Policy Declarations.

### 1) ASSURED

**NATIONAL LIABILITY & FIRE INSURANCE COMPANY** (hereinafter referred to as the Company or as the ASSURERS) in consideration of premiums as set forth herein, or as may be endorsed hereon, does insure **EGL EAGLE GLOBAL LOGISTICS INC.** and/or their subsidiary and/or affiliated companies under their direct management control, (hereinafter referred to as the ASSURED) subject to all the terms, conditions, exceptions and warranties herein set forth.

### 2) ATTACHMENT AND CANCELLATION

This Policy and the coverage granted hereunder to attach and cover in respect of all insured goods and/or merchandise shipped, or at locations covered herein, from 12:01 A.M., local standard time, April 1, 2007 to 12:01 A.M., local standard time, April 1, 2010.

This Policy may be cancelled by either party giving the other, or its agent, sixty (60) days written notice, or unless otherwise mutually agreed upon or otherwise provided for herein, or unless otherwise voided by reason of breach of warranty, misrepresentation or concealment, but such cancellation shall not affect risks which have attached prior to such notice of cancellation.

Notwithstanding anything herein to the contrary, the Company may effect cancellation of this Policy by giving not less than ten (10) days written notice thereof to the Assured or its agent, when any premium has been due and unpaid for a period of thirty (30) days, but such cancellation shall not affect risks which have attached prior to such notice of cancellation.

### 3) PREMIUM

The consideration for this Policy is a Flat Annual Premium of $2,400,000., payable in equal quarterly installments of $600,000., commencing at inception.

Commission: 3.00%, payable to AON Risk Services.

3

ORIGINAL

### 4) GEOGRAPHIC LIMITS

At and from ports and/or places in the world to ports and/or places in the world direct or via other ports and/or places, with privilege of transshipment by land and/or water, but excluding any coverage that is prohibited by the AIMU U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE appearing elsewhere in these Policy Declarations.

### 5) DIFFERENCE IN CONDITIONS (DIC) & LIMITS (DIL) - ADMITTED POLICIES

In consideration of the premiums paid, these Assurers agree that all applicable exposures covered by this master policy that are also covered for the Assured under local admitted policies [whether or not issued through or at the direction of Starr Marine Agency, and whether or not accepted by Starr Marine Agency as assumed reinsurance in conjunction with this master policy] are covered hereunder for the Difference in Conditions and/or the Difference in Limits between the terms of this master policy and the terms of insurance provided under such local admitted policies. The coverage provided hereunder shall apply as "Excess" insurance, and shall not apply or contribute to the payment of any loss until the amount of such local admitted insurance shall have been exhausted, it being understood and agreed that under this master policy the Assured is to be compensated to the extent of the difference between the amount collectible from such local admitted insurance and the amount of actual loss otherwise recoverable hereunder. Any payments made under any local admitted policies shall be applied toward the exhaustion of the Limits of Liability of this master policy as if the payments had been made under this master policy.

The foregoing provisions of this clause, DIFFERENCE IN CONDITIONS (DIC) & LIMITS (DIL) - ADMITTED POLICIES, apply only to the following Sections of this master policy:

Section I(a)     Shippers Interest Insurance
Section I(b)     Customer Storage Insurance
Section II(a)    Cargo Legal Liability
Section II(b)    Warehouseman's Legal Liability

However, notwithstanding the foregoing, it is understood and agreed that coverage under this clause shall not be construed in any way or manner to expand coverage for nor increase any Limits of Liability beyond that which is specified in the master policy and/or any other endorsement attached to the master policy, including but not limited to any exclusion of risk specified under the PARAMOUNT WARRANTIES, as follows:

- FREE OF CAPTURE AND SEIZURE WARRANTY (FC&S Warranty (April 3,1980) shall apply unless specifically accepted in writing elsewhere in the Master Policy
- AIMU STRIKES, RIOTS AND CIVIL COMMOTIONS WARRANTY (SR&CC Warranty, April 3,1980) shall apply unless specifically accepted in writing elsewhere in the Master Policy
- AIMU Nuclear Exclusion Clause - Cargo (April 1, 1991) shall apply unless specifically accepted in writing elsewhere in the Master Policy
- AIMU U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE within the Master Policy which shall apply and govern in all cases.

### 6) NO COINSURANCE

This policy shall be primary and shall respond for one hundred percent (100%) of each covered loss and/or claim up to the applicable limit of liability set forth elsewhere herein.

4

ORIGINAL

## 7) PERMISSION FOR SPECIFIC EXCESS INSURANCE

Permission granted the Assured to purchase specific excess insurance over any and/or all coverage parts of this policy.

## 8) LIMITS OF LIABILITY

On account of all losses and/or claims and/or expenses, including defense costs, arising out of a single loss occurrence, under this Policy CSF00022USA1 and CSF00022USA1WR, combined, these ASSURERS shall not be liable for more than a maximum of $40,000,000., but not more than the following sub-limits:

### Section I(a) Shippers Interest Insurance

$30,000,000. for all losses and/or claims and/or expenses arising from a single occurrence.
- $7,500,000. Any one Certificate issued on Starrmarine.com
- $7,500,000. Any one shipment to be insured under contract or insured bill of lading or insured waybill or insured transit document. Any request for increased limit must be accompanied by particulars, including a copy of the subject contract, if any.

### Section I(b) Customer Storage Insurance

$30,000,000. Any one location for all losses and/or claims and/or expenses arising from a single occurrence.
- $7,500,000. Any one customer at any one location.

### Section II(a) Cargo Legal Liability

$30,000,000. for all losses and/or claims and/or expenses, including defense costs, arising from a single occurrence, but not more than shown in the following sub-limits, unless expressly agreed in writing prior to attachment of risk [as to terms, conditions, limitations and premium, if any]:
- $7,500,000. Any declaration of value; except,
- $25,000. Any one shipment of jewelry;
- $100,000. Any one shipment of professionally crated, household goods and personal effects of Military personnel;
- $50,000. Any one shipment, but not more than $2,500,000. in the Annual Aggregate in respect of the consequential loss provisions within International Convention or National Law (clause 3 of Cargo Legal Liability).

### Section II(b) Warehouseman's Legal Liability

$30,000,000. Any one location for all losses and/or claims and/or expenses, including defense costs, arising from a single occurrence, nor for more than shown in the following sub-limits, unless expressly agreed in writing prior to attachment of risk [as to terms, conditions, limitations and premium, if any]:
- $7,500,000. Any one declaration of value; except,
- $25,000. Any one customer, for jewelry;

5

- $100,000. Any one individual customer, for professionally crated, household goods and personal effects of Military personnel;
- $50,000. Any one customer, but not more than $2,500,000. in the Annual Aggregate in respect of the consequential loss provisions within International Convention or National Law (clause 2 of Warehouseman's Legal Liability).

Section III Freight Forwarder's Errors & Omissions Liability

$3,000,000. any one incident or occurrence, including defense costs.

Annual Aggregate Limits
- $20,000,000. Any one occurrence in respect of Earthquake Shock, in respect of Section I(b) Customer Storage Insurance and Section II(b) Warehouseman's Legal Liability, either or both combined. Earthquake Defined: Claims for each loss caused by earthquake shock or volcanic action shall constitute a single claim hereunder; provided if more than one earthquake shock or volcanic action shall occur within any period of one hundred and sixty-eight hours, such earthquake shocks or volcanic actions shall be deemed to be a single loss within the meaning hereof. It is further noted and agreed that any loss or damage reasonably attributable to earthquake shocks or volcanic actions, subject to the above mentioned 168 hour provision and either commencing or occurring within the term of this insurance, shall be deemed recoverable hereunder, subject always to the annual aggregate limit set forth herein.
- $30,000,000. in the Annual Aggregate for the perils of Flood and Windstorm, both perils combined, in respect of Section I(b) Customer Storage Insurance and Section II(b) Warehouseman's Legal Liability, either or both combined. Flood Defined: A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is the policyholder's leased or owned property) from (i) overflow of inland or tidal waters; or (ii) unusual and rapid accumulation or runoff of surface waters from any source; or (iii) mudflow; or (iv) collapse or subsidence of land along the shore of a lake or similar body of water exceeding anticipated cyclical levels that result in a flood as defined above. Windstorm defined:  All named storm events that occur within any seventy-two hour period will constitute a single wind event. The expiration of this policy will not reduce the seventy-two hour period.  Wind is defined as direct action of wind, including any substance driven by wind.  Any named or identified storm or weather disturbances, which is named by the U. S. National Weather Service and/or National Hurricane Center or its foreign equivalent.  Subject always to the annual aggregate limit set forth herein.
- $100,000. in the Annual Aggregate, applicable to clause 4) Fines and Penalties, of Section III, Freight Forwarder's Errors & Omissions Liability.

War Risk Open Policy (Cargo), CSF00022USA1WR

- $30,000,000. by any one vessel, nor for more than $30,000,000. by any one aircraft.

Notwithstanding any of the foregoing, nothing shall operate to increase the $40,000,000. maximum limit of liability on account of all losses and/or claims and/or expenses, including defense costs, arising from a single occurrence, all coverages combined.

## 9) SUE AND LABOR CLAUSE

In the case of any loss or misfortune, it shall be lawful and necessary for the ASSURED, his or their factors, servants and assigns to sue, labor and travel for, in and about the defense, safeguard and recovery of the goods and merchandise insured hereunder, or any part thereof, without prejudice to this insurance, to the charges whereof this Company will contribute according to the rate and quantity of the sum hereby insured; nor shall the acts of the ASSURED or this Company in recovering, saving and preserving the

6

ORIGINAL

property insured, in case of disaster, be considered a waiver or an acceptance of an abandonment.

**10) OTHER INSURANCE**

If at the time of loss, damage or claim there is available to a named or unnamed Assured or any other interested party any other insurance or bond which would apply in the absence of this Policy, the insurance under this Policy shall apply only as excess insurance over such other insurance or bond.

**11) ERRORS AND OMISSIONS**

It is agreed that this insurance shall not be prejudiced by any unintentional delay or inadvertent omission in reporting hereunder, or any unintentional error in the description of the interest, vessel or voyage, if prompt notice be given the ASSURERS in all such cases as soon as said delay and/or omission and/or error becomes known to the ASSURED and adjustment of premium be made if and as required.

**12) FAILURE TO DISCLOSE HAZARDS**

Failure of the Assured to disclose all hazards existing as of the inception of this Policy shall not prejudice the Assured with respect to the coverage afforded by this Policy provided such failure or omission is not intentional.

**13) ASSIGNMENT – INSURANCE VOID**

Warranted by the ASSURED that the assignment of this Policy or any insurable interest therein to any party without the consent of the Company shall render the insurance affected by such assignment void.

**14) SUBROGATION ASSIGNMENT – INSURANCE VOID**

Warranted by the ASSURED that the assignment of subrogation rights, if any, to any party without the consent of the Company shall render the insurance affected by such assignment void.

**15) INSPECTION OF RECORDS**

This Company, or its agent, shall have the privilege, at any time during business hours, to inspect the records of the Assured as pertain to the insurance provided by this Policy.

**16) TIME FOR SUIT**

It is a condition precedent to any action, suit or proceeding for the recovery of any claim upon, under, or by virtue of this Policy that such action, suit or proceeding shall be commenced within twelve (12) months next after the date of the accident, disaster or event causing loss of, or damage to, the insured goods or giving rise to a claim for sue and labor expenses or, in case of a claim for General Average contribution, salvage and/or special charges, next after the date of actual payment thereof by the ASSURED. Provided however, that if by the laws of the State or other place within which this Policy or any certificate thereunder is issued or where the action, suit or proceeding is instituted, such limitation is invalid, then any such claim shall become barred and void unless such action, suit or proceeding shall be

7

ORIGINAL

commenced within the shortest limit of time permitted by the laws of such State or place to be fixed herein for the bringing of such suit, action or proceeding.

## 17) BROKER AS AGENT FOR ASSURED

It is a consideration of this Policy that the ASSURED'S BROKER, AON Risk Services, 199 Fremont St., San Francisco, CA 94105, who caused this insurance to be written, or any substituted broker, shall be deemed to be and continue to be the Agent of the ASSURED for all purposes in connection with this insurance and especially for the purpose of receiving notice of cancellation or for accepting or rejecting any proposed modification or alteration in the terms of this Policy. Any such notice given to the said Agent of any such modification or alteration agreed to by the said Agent shall have the same effect as if given to, or agreed to by, the ASSURED. This agency shall continue until written notice of revocation by the ASSURED shall have been received by the ASSURERS, or by the office of Starr Marine Agency of California that issued this policy.

## 18) GOVERNING LAW

All questions of liability arising under this Policy are to be governed by the law and customs of England, except in the United States and its possessions where the law and customs of the United States will prevail.

## 19)   PARAMOUNT WARRANTIES

The following Warranties set forth in Clause 19(a - d) shall be paramount and shall not be modified or superseded by any other provision included herein or stamped or endorsed hereon unless such other provision refers specifically to the risks excluded by such Warranties and expressly assumes the said risks.

## 19 (a)   FREE OF CAPTURE AND SEIZURE WARRANTY (F.C.& S.)

Notwithstanding anything herein contained to the contrary, this insurance is warranted free from capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise; also warranted free, whether in time of peace or war, from all loss, damage or expense caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter or by any mine or torpedo, also warranted free from all consequences of hostilities or warlike operations (whether there be a declaration of war or not), but this warranty shall not exclude collision or contact with aircraft, rockets or similar missiles or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein is performing) by a hostile act by or against a belligerent power; and for the purposes of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power.

Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or from the consequences of the imposition of martial law, military or usurped power, or piracy.

ORIGINAL

### 19 (b)    STRIKES, RIOTS AND CIVIL COMMOTIONS WARRANTY (S.R. & C.C.)

Notwithstanding anything herein contained to the contrary, this insurance is warranted free from loss, damage or expense caused by or resulting from:

(1) strikes, lockouts labor disturbances, riots, civil commotions, or the acts of any person or persons taking part in any such occurrences or disorders,

(2) vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional.

### 19 (c) DELAY CLAUSE

Warranted free of claim for loss of market or for loss, damage or deterioration arising from delay, whether caused by a peril insured against or otherwise, unless expressly assumed in writing hereon.

### 19 (d)    NUCLEAR EXCLUSION CLAUSE - CARGO (AIMU,  APRIL 1, 1991)

Notwithstanding anything to the contrary herein, it is hereby understood and agreed that this Policy shall not apply to any loss, damage or expense due to or arising out of, directly or indirectly, nuclear reaction, radiation or radioactive contamination, regardless of how it was caused. However, subject to all provisions of this Policy, if this Policy insures against fire, then direct physical damage to the property insured located within the United States, or any territory of the United States or Puerto Rico by fire directly caused by the above excluded perils, is insured, provided that the nuclear reaction, radiation, or radioactive contamination was not caused, whether directly or indirectly, by any of the perils excluded by the F.C. & S. Warranty of this Policy (Clause 19 (a) above).

Nothing in this Clause shall be construed to cover any loss, damage, liability or expense caused by nuclear reaction, radiation or radioactive contamination arising directly or indirectly from the fire mentioned above.

### 20) AIMU EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE WITH U.S.A. ENDORSEMENT (March 1, 2003)

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1.   In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

1.1   ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

1.2   the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

1.3   any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

9

ORIGINAL

1.4    the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE
(U.S.A. ENDORSEMENT)

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that

if fire is an insured peril

and

where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Extended Radioactive Contamination Exclusion Clause March 1, 2003 any loss or damage arising directly from that fire shall, subject to the provisions of this insurance (reinsurance), be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

## 21) AIMU CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND ELECTROMAGNETIC EXCLUSION CLAUSE (March 1, 2003)

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act  involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

## 22) AIMU U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

ORIGINAL

## SECTION I

### (a) SHIPPERS INTEREST INSURANCE

### (b) CUSTOMER STORAGE INSURANCE

Unofficial Copy Office of Chris Daniel District Clerk

11

ORIGINAL

## SECTION I (a) SHIPPERS INTEREST INSURANCE

### 1) ASSURED

**NATIONAL LIABILITY & FIRE INSURANCE COMPANY** (hereinafter referred to as the Company or as the ASSURERS) in consideration of premiums to be paid at the rates set forth herein, or as may be endorsed hereon, does insure **EGL EAGLE GLOBAL LOGISTICS INC.** (hereinafter referred to as the ASSURED) subject to all the terms, conditions, exceptions and warranties hereinafter set forth, **FOR THE ACCOUNT OF:**

(a) Shippers who elect insurance, solely as evidenced by Certificates issued via Starrmarine.com under Policy No. CSF00022USA1. If this Company is caused to pay any claim for loss of or damage to goods insured under an unauthorized Certificate (meaning a Certificate produced by means other than Starrmarine.com absent the express written consent of this Company), then the Assured shall reimburse this Company for said claim including loss adjustment expenses.

(b) Shippers who elect by written contract to insure all shipments stipulated by said contract. EXCLUDING, in any event, any loss of or damage to goods from causes or perils that are not covered by the terms and conditions of this Section.

### 2) CERTIFICATE AUTHORITY

Authority is hereby granted the ASSURED to countersign and issue, via Starrmarine.com, the form of Certificate of Insurance or Special Marine Policy furnished by the ASSURERS for any or all shipments in respect of which insurance is provided hereunder, or to enter into written contract for insured shipments, and in consideration thereof the ASSURED warrants that no Certificate or Special Marine Policy, or written contract for insured shipments, will be issued with terms thereon varying from the conditions of this Policy and/or any written instructions that are or may be given by the ASSURERS and/or the office of the Starr Marine Agency of California that issued this policy.

If the ASSURED issues a Certificate of Insurance or Special Marine Policy, or enters into a written contract for insured shipments, without incorporating the applicable deductible set forth in the policy, if any, the ASSURED agrees to reimburse this Company, for the full amount of any loss that this Company pays under such Certificate of Insurance or Special Marine Policy, or written contract for insured shipments, including all loss adjustment expenses up to the amount of the deductible. If the ASSURED issues a Certificate of Insurance or Special Marine Policy, or written contract for insured shipments, with terms varying from the conditions of this Policy and/or any written instructions given by the ASSURER or their agents, the ASSURED agrees to reimburse the Company for the full amount of the loss that the Company may be obligated to pay to an innocent third party, including loss adjustment expenses caused by such variation under such Certificate of Insurance or Special Marine Policy, or written contract for insured shipments. The Assured further agrees that all such reimbursements shall be due and payable to the Company within 60 days of presentation to the Assured.

### 3) GOODS INSURED AND CERTAIN RESTRICTIONS

Upon lawful goods and/or merchandise, consisting principally of general merchandise, shipped under deck and/or on deck by the ASSURED, (a) being the property of the ASSURED, or that of others in which the ASSURED may have an insurable interest, or for which the ASSURED may hold or receive instructions to effect insurance, provided such instructions be given in writing prior to shipment, and

12

ORIGINAL

before any known or reported loss or accident; and/or (b) consigned to the ASSURED, or to others for the account or control of the ASSURED, being the property of the ASSURED or that of others in which the ASSURED may have an insurable interest or for which the ASSURED may hold or receive instructions to effect insurance, provided such instructions be given in writing prior to shipment, and before any known or reported loss or accident; but excluding shipments sold by the ASSURED on F.O.B., F.A.S., Cost and Freight, or similar terms whereby the ASSURED is not obligated to furnish marine insurance and also excluding such shipments as are bought by the ASSURED on C.I.F. terms, or other terms which include marine insurance.

Whether by Certificate or by written contract, EGL EAGLE GLOBAL LOGISTICS INC. may only offer Shippers Interest Insurance within jurisdictions where EGL EAGLE GLOBAL LOGISTICS INC. has met any legal or regulatory requirement entailing licensing for the purpose of selling Shippers Interest Insurance.

Unless expressly agreed in writing prior to attachment of risk [as to terms, conditions, limitations and premium, if any], the following goods and/or merchandise and/or interests and/or voyages, are excluded:

    (a) Any shipment to be insured by Certificate to be issued on starrmarine.com destined for, or to be made within, Iraq [or any other country that this Company may put 'On Application' from time-to-time].

    (b) Any shipment to be insured under written contract or insured bill of lading or insured waybill or insured transit document destined for Iraq [or any other country that this Company may put 'On Application' from time-to-time].

    (c) Any shipment of household goods or personal effects owned by individual(s).

    (d) Accounts, bills, deeds, evidences of debt, letters of credit, passports, documents, railroad or other tickets, bullion, money, notes, securities, negotiable instruments, jewelry and precious stones, paintings, statuary or other works of art, or unlawful goods and/or contraband.

    (e) Gold, silver, platinum and any other precious metal or any alloy thereof; however, precious metals that are part of industrial or data processing equipment and machines are covered.

    (f) Any shipment of live animals or live plants.

    (g) Any shipment and/or commodity and/or interest that is excluded in EGL EAGLE GLOBAL LOGISTICS INC. tariff, bill of lading, waybill, or contract.

## 4) DEDUCTIBLE

Each claim for loss or damage shall be adjusted separately and from the amount of each separately adjusted claim the sum of $5,000. shall be deducted.

In the event of recovery on a claim that has been paid, the Assurers and the Assured shall share in the recovery in proportion to their respective interests in the claim.

## 5) ILLICIT TRADE

Warranted free from any charge, expense, damage or loss which may arise in consequence of a seizure or detention, for, or on account of any illicit or prohibited trade, or any trade in articles contraband of war, or in the violation of any port rule or regulation.

ORIGINAL

## 6) DEVIATION CLAUSE

This insurance shall not be vitiated by any unintentional error in description of vessel, voyage or interest, or by deviation, overcarriage, change of voyage, transshipment or any other interruption of the ordinary course of transit, from causes beyond the control of the ASSURED. It is agreed however, that any such error, deviation or other occurrence mentioned above shall be reported to this Company as soon as known to the ASSURED, and additional premium paid if required.

## 7) CONVEYANCES

(a) Per Iron and/or Steel Steamer or Steamers and/or Iron and/or Steel Vessel or Vessels propelled by power (excluding sailing vessels, with or without auxiliary power, except as connecting conveyances) and connecting conveyances;
(b) By aircraft and connecting conveyances;
(c) By truck, trailer or rail car.

Notwithstanding the foregoing, excluding barge or barges, except as connecting conveyances.

## 8) CRAFT CLAUSE

This insurance also to cover during any special or supplementary lighterage provided written notice be given the ASSURERS in all such cases when such facts are known to the ASSURED and additional premium to be paid if and as required, with each craft and/or lighter to be deemed a separate insurance. This insurance shall not be prejudiced by any agreement exempting lightermen from liability.

## 9) CARRIER CLAUSE

Warranted that this insurance shall not inure, directly or indirectly, to the benefit of any carrier or bailee.

## 10)   VALUATION

(a) Valued at amount declared as reflected in Certificate, but in no event for more than the amount of invoice, including all charges included in the invoice and including prepaid or advance freight and/or freight payable "vessel lost or not lost", not included in the charges included in the invoice, plus 20%, nor in any event for more than the applicable limit of liability of this policy; or,
(b) Valued at the amount established in written contract, but in no event for more than the amount of invoice, including all charges included in the invoice and including prepaid or advance freight and/or freight payable "vessel lost or not lost", not included in the charges included in the invoice, plus 20%, nor in any event for more than the applicable limit of liability of this policy;
(c) In the absence of an invoice, where an invoice would have been required to establish valuation, then valued at Actual Cash Value, with due deduction for depreciation, on the date and place of loss;
(d) Notwithstanding the foregoing, negotiable instruments shall be valued at the cost of reconstruction only, but in no event for more than the applicable limit of liability of this policy.

Foreign currency is to be converted into United States currency at Banker's sight rate of exchange on the date of issuance of each invoice and/or credit and/or draft.

14

ORIGINAL

**11)   ACCUMULATION**

Should there be an accumulation of shipments in respect of which the insured value exceeds the limits expressed in this Policy by reason of an interruption of transit, or by reason of a casualty, or at a transshipping point, or on a connecting conveyance, the ASSURERS shall hold covered such excess amount and shall be liable for the full amount at risk (but in no event for more then double the applicable limit of liability) provided such accumulation is beyond the control of the Assured and provided written notice be given to the ASSURERS in all such cases as soon as the fact becomes known to the ASSURED.

**12)   VALUE AT RISK**

In the event that the total value at risk exceeds the applicable Limit of Liability set forth herein, these Assurers shall nevertheless be entitled to receive premium on the full value at risk. The acceptance of such premiums by the Assurer shall in no way alter or increase the applicable Limits of Liability, but the Assurer shall be liable for the full amount of loss up to, but not exceeding such Limit of Liability. In the event of loss which exceeds the applicable Limit of Liability, and deductible will be subtracted from the applicable Limit of Liability and not from the full amount of loss.

**13)   PERILS WATERBORNE**

Touching the adventures and perils which the ASSURERS are contented to bear and take upon themselves while the goods and/or merchandise are waterborne (notwithstanding any extension of coverage provided under this Policy, unless otherwise specifically agreed) they are of the Seas, Fires, Assailing Thieves, Jettisons, Barratry of the Master and Mariners, and all other like perils losses and misfortunes that have or shall come to the hurt, detriment or damage of the said goods or any part thereof, except as may be otherwise specifically provided for herein or endorsed hereon.

NOTE: For perils insured against while the goods are on docks, wharves or elsewhere on shore and/or during land transportation within the coverage of this Policy, see Clause 15.

**14)   FREE OF PARTICULAR AVERAGE**

Warranted free from Particular Average unless caused by the stranding, sinking, burning and/or collision of the vessel [in the case of aircraft, warranted free from Particular Average unless caused by fire, crash or collision of the aircraft] but to pay the insured value of any merchandise and/or goods jettisoned and/or washed overboard, irrespective of percentage.  The foregoing warranty shall not apply where broader Terms of Average are provided for within Clause 16.

**15)   SHORE CLAUSE**

Unless broader terms and conditions have been provided for in Clause 16 or elsewhere herein; where this insurance by its terms covers while on docks, wharves, or elsewhere on shore, and/or during land transportation, it shall include the risks of collision, derailment, overturning or other accident to the conveyance, fire, lightning, sprinkler leakage, cyclones, hurricanes, earthquakes, floods (meaning the rising of navigable waters) and/or collapse or subsidence of docks or wharves, even though the insurance be otherwise Free of Particular Average.

ORIGINAL

### 16)   AVERAGE TERMS AND CONDITIONS

Shipments of goods and/or merchandise shipped under refrigeration are insured per 16(d) and not otherwise.

Shipments of used ["used" means previously used for the purposes intended and not subsequently fully reconditioned] goods and/or used merchandise and/or used equipment are insured per 16(g) and not otherwise.

**(a) SHIPMENTS UNDER DECK.** Except while on deck of the ocean vessel and subject to an On Deck Bill of Lading, shipments of general merchandise are insured, against All Risks of physical loss or damage from any external cause, irrespective of percentage.

**(b) SHIPMENTS ON DECK.**  Shipments of general merchandise which are shipped on deck subject to an On Deck Bill of Lading are insured, Warranted free from Particular Average unless caused by the stranding, sinking, burning and/or collision of the vessel: but to pay the insured value of any merchandise and/or goods jettisoned and/or washed overboard, irrespective of percentage. Notwithstanding the foregoing, merchandise and/or goods shipped on deck subject to an Under Deck bill of lading, without the knowledge and consent of the Assured, shall be treated as under deck cargo and insured as per Clause 16 (a) above.

Notwithstanding the above, all insured goods shipped in fully enclosed containers which are stowed on deck, are insured subject to the provisions of this policy applying to under deck shipments, provided such goods are subject to an Under Deck or an optional Under Deck/On Deck Bill of Lading.

**(c) SHIPMENTS BY AIRCRAFT OR TRUCK, TRAILER OR RAIL CAR.**  Shipments of general merchandise by aircraft or truck, trailer or rail car are insured against All Risks of physical loss or damage from any external cause, irrespective of percentage.  Whenever the words "ship", "vessel", "seaworthiness", "ship owner", or "vessel owner" appear in this Policy (except in Clause 7 "Conveyances" and Clause 7 of Declarations, "Limits of Liability"), they are deemed to include also the words "aircraft", "air worthiness" or "aircraft owner".

**(d) SHIPMENTS UNDER REFRIGERATION.**  Shipments of goods and/or merchandise shipped under refrigeration are insured against all risks of physical loss or damage from any external cause, irrespective of percentage, but excluding those risks excepted by the F.C.& S. and S.R.& C.C. warranties and excluding the risk of deterioration unless resulting from:

    1. A General Average act;
    2. A disablement and thereby delay of the carrying vessel caused by breakdown or derangement of the vessel's propelling machinery, rudder or stern post;
    3. A breakdown or derangement of refrigerating machinery and/or plant insulation.

Under no circumstances shall claim for deterioration be payable hereunder unless the breakdown, derangement or delay has lasted at least 24 consecutive hours as evidenced by the engineer's or other appropriate ships log or by an accurate temperature recording device.

ORIGINAL

It is warranted by the Assured that the interest is in good condition and properly dressed, cooled and/or frozen at the time of attachment of this insurance.

It is a requirement of this insurance that in the event of an occurrence giving rise to a claim for deterioration under this insurance, that a surveyor approved by this Company be appointed to survey the damages prior to unloading the merchandise from the container.

(e) **SHIPMENTS BY BARGE.**   Shipments by barge are not covered by this Section, other than as a connecting conveyance, and then per the average terms applicable to the principal conveyance.

(f) **SHIPMENTS BY MAIL.**  Shipments of general merchandise by mail or parcel post, while in the custody of postal authorities, are insured against All Risks of physical loss or damage from any external cause, irrespective of percentage.

It is understood and agreed that a certificate of mailing will be secured from the Postal Authorities for each package shipped by ordinary mail or parcel post if possible. Shipments are to be made in accordance with United States Postal Service rules or regulations, or in accordance with the rules and regulations of the postal authorities of the country where mailed, if such mailing occurs outside the United States. When permitted, mail shipments are to be sent by Government insured parcel post or, if this is not possible, by registered parcel post if permissible. The ASSURED agrees that each package shipped by Government insured parcel post will be insured with the Government for the maximum amount of insurance allowed by the Government.

(g) **SHIPMENTS OF USED GOODS AND/OR USED MERCHANDISE AND/OR USED EQUIPMENT.**  Shipments of used ["used" means previously used for the purposes intended and not subsequently fully reconditioned] goods and/or used merchandise and/or used equipment are insured:

Warranted free from Particular Average unless caused by the stranding, sinking, burning and/or collision of the vessel: but to pay the insured value of any merchandise and/or goods jettisoned and/or washed overboard, irrespective of percentage.

Where this insurance by its terms covers while on docks, wharves, or elsewhere on shore, and/or during land transportation, it shall include the risks of collision, derailment, overturning or other accident to the conveyance, fire, lightning, sprinkler leakage, cyclones, hurricanes, earthquakes, floods (meaning the rising of navigable waters) and/or collapse or subsidence of docks or wharves, even though the insurance be otherwise free of Particular Average.

Also to cover theft pilferage or non-delivery.

17)   **WAREHOUSE TO WAREHOUSE**

This insurance attaches from the time the goods leave the Warehouse and/or Store at the place named in the Declaration and/or Certificate for the commencement of the transit and continues during the ordinary course of transit, including customary transshipment, if any, until the goods are discharged overside from the overseas vessel at the final port. Thereafter the insurance continues whilst the goods are in transit and/or awaiting transit until delivered to the final warehouse at the destination named in the policy or until the expiry of 15 days (or 30 days, if the destination to which the goods are insured is outside the

17

ORIGINAL

limits of the port) whichever shall first occur. The time limits referred to above to be reckoned from midnight of the day on which the discharge overside of the goods hereby insured from the overseas vessel is completed. Held covered at a premium to be agreed in the event of transshipment, if any, other than as above and/or in the event of delay in excess of the above time limits arising from circumstances beyond the control of the ASSURED.

It is necessary for the ASSURED to give prompt notice to these ASSURERS when they become aware of an event for which they are "held covered" under this Policy and the right to such cover is dependent on the compliance with this obligation.

## 18)   MARINE EXTENSION CLAUSE

I. This insurance attaches from the time the goods leave the Warehouse at the place named in the Policy, Certificate or Declaration for the commencement of the transit and continues until the goods are delivered to the final Warehouse at the destination named in the Policy, Certificate or Declaration, or a substituted destination as provided in Clause III hereunder.

II. This insurance specially to cover the goods during deviation, delay, forced discharge, re-shipment, transshipment and any other variation of the adventure arising from the exercise of a liberty granted to the shipowner or charterer under the contract of affreightment.

III. In the event of the exercise of any liberty granted to the shipowner or charterer under the contract of affreightment whereby such contract is terminated at a port or place other than the original insured destination, the insurance continues until the goods are sold and delivered at such port or place; or, if the goods be not sold but are forwarded to the original insured destination or to any other destination this insurance continues until the goods have arrived at final warehouse as provided in Clause I.

IV. If while this insurance is still in force and before the expiry of 15 days from midnight of the day on which the discharge overside of the goods hereby insured from the overseas vessel at the final port of discharge is completed, the goods are re-sold (not being a sale within the terms of Clause III) and are to be forwarded to a destination other than that covered by this insurance, the goods are covered hereunder while deposited at such port of discharge until again in transit or until the expiry of the aforementioned 15 days whichever shall first occur. If a sale is effected after the expiry of the aforementioned 15 days while this insurance is still in force the protection afforded hereunder shall cease as from the time of the sale.

V. Held covered at a premium to be arranged in case of change of voyage or of any omission or error in the description of the interest, vessel or voyage.

VI. This insurance shall in no case be deemed to extend to cover loss damage or expense proximately caused by delay or inherent vice or nature of the subject matter insured.

VII. It is a condition of this insurance that there shall be no interruption or suspension of transit unless due to circumstances beyond the control of the ASSURED.

None of the foregoing subdivisions of this Clause 18 shall be construed as in any way enlarging any of the other terms and conditions of this Policy (except in so far as any of the provisions of Clause 17. of this Policy are inconsistent herewith), it being particularly understood and agreed that the F.C.& S.

ORIGINAL

Warranty remains in full force and effect and that nothing in the foregoing shall be construed as extending this insurance to cover any risks of war or consequences of hostilities.

### 19)   SOUTH AMERICAN CLAUSE

Notwithstanding anything contained elsewhere herein to the contrary (particularly the Marine Extension Clause and the Warehouse to Warehouse Clause) the insurance provided hereunder for all shipments to South America shall continue to cover for sixty (60) days [ninety (90) days on shipments via the Magdalena River] after completion of discharge of the overseas vessel at port of destination or until the goods are delivered to the final Warehouse at destination, whichever may first occur, and shall then terminate.

The time limit above to be reckoned from midnight of the day on which the discharge of the insured goods from the overseas vessel is completed.

### 20)   LANDING, WAREHOUSING & FORWARDING CHARGES

Notwithstanding any Average warranty contained herein, these ASSURERS agree to pay any landing, warehousing, forwarding or special charges when they are incurred by reason of a peril insured against. Also to pay the insured value of any package or packages which may be totally lost in loading, transshipment or discharge.

### 21)   RETURNED SHIPMENTS

In the event of refusal or inability of the ASSURED, or the consignee at the destination named in the policy, certificate or declaration, to accept delivery of goods and/or merchandise which have been insured by this Policy, then this Policy is extended to cover such goods and/or merchandise when reshipped in its original packing to the original point of origin. It being understood and agreed that notice must be given to the ASSURER by the ASSURED as soon as refusal of acceptance is known to them, and prior to any further movement of the said goods and/or merchandise to any destination other than that named in the policy, certificate or declaration. Such goods and/or merchandise being held covered at rates, terms and conditions to be agreed.

### 22)   BOTH TO BLAME CLAUSE

Where goods are shipped under a Bill of Lading containing the so-called "Both to Blame Collision" Clause, these ASSURERS agree as to all losses covered by this insurance, to indemnify the ASSURED for this Policy's proportion of any amount (not exceeding the amount insured) which the ASSURED may be legally bound to pay to the shipowners under such clause. In the event that such liability is asserted, the ASSURED agrees to notify these ASSURERS who shall have the right at their own cost and expense to defend the ASSURED against such claim.

### 23)   BILL OF LADING ETC., CLAUSE

The ASSURED is not to be prejudiced by the presence of the negligence clause and/or latent defect clause in the Bill of Lading and/or Charter Party. The seaworthiness of the vessel as between the ASSURED and these ASSURERS is hereby admitted and the wrongful act or misconduct of the

19

ORIGINAL

shipowner or his servants causing a loss is not to defeat the recovery by an innocent ASSURED if the loss in the absence of such wrongful act or misconduct would have been a loss recoverable on the Policy. With leave to sail with or without pilots, and to tow and assist vessels or craft in all situations, and to be towed.

### 24) LOADING OF BULK COMMODITIES

Warranted by the ASSURED that vessels and/or vessel holds to be loaded with bulk Grain, bulk Petroleum and/or other Bulk Commodities shall be loaded under the inspection of a surveyor appointed or approved by the Company for that purpose and his certificate as to proper loading and seaworthiness must be obtained before the sailing of such vessels or the insurance under this Policy in respect of such cargo to be void.

### 25) MACHINERY CLAUSE

When the property insured under this Policy includes a machine, article, interest or set consisting when complete for sale or use of several parts, then in case of loss or damage covered by this insurance to any part of such machine, article, interest or set, these ASSURERS shall be liable only for the proportion of the insured value of the part lost or damaged, or at the ASSURED'S option, for the cost and expense, including labor and forwarding charges, of replacing or repairing the lost or damaged part; but in no event shall these ASSURERS be liable for more than the insured value of the complete machine, article, interest or set.

### 26) LABELS CLAUSE

In case of damage affecting labels, capsules or wrappers, these ASSURERS, if liable therefor under the terms of this Policy, shall not be liable for more than an amount sufficient to pay the cost of new labels, capsules or wrappers, and the cost of reconditioning the goods, but in no event shall these ASSURERS be liable for more than the insured value of the damaged merchandise.

### 27) EXPLOSION CLAUSE

Including the risk of explosion, howsoever or wheresoever occurring during the currency of this insurance unless excluded by the F.C. & S. Warranty or the S.R. & C.C. Warranty set forth herein or unless proximately caused by the inherent vice or nature of the subject matter insured or by the personal negligence or act of the ASSURED.

### 28) DELIBERATE DAMAGE/POLLUTION HAZARD CLAUSE

This Policy is extended to cover, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under this Policy (subject to all its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence. This agreement shall not increase the Limits of Liability provided for in this Policy.

20

ORIGINAL

**29)  GROUNDING CLAUSE**

Grounding in canals, harbors, or tidal rivers not to be deemed a stranding within the meaning of this Policy or any amendment thereof; but the ASSURERS to pay for any loss or damage to the goods or merchandise which may be proved to have resulted directly therefrom and which would be recoverable under the terms of this Policy if caused by stranding.

**30)  INCHMAREE CLAUSE**

This insurance is also specially to cover any loss of or damage to the interest insured hereunder, through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation and/or management of the vessel by the master, mariners, mates, engineers or pilots.

**31)  GENERAL AVERAGE CLAUSE**

General Average and Salvage Charges payable according to United States laws and usage and/or as per Foreign Statements and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

**32)  GENERAL AVERAGE CONTRIBUTORY CLAUSE**

The Company shall be liable for only such proportion of General Average and Salvage Charges as the sum hereby insured (less Particular Average for which this Company is liable hereunder, if any) bears to the contributory value of the goods or merchandise insured hereunder.

**33)  CONSTRUCTIVE TOTAL LOSS CLAUSE**

No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its insured value when the expenditure had been incurred.

**34)  PREMIUM PAYMENTS**

Premiums at the rates specified in the schedule attached hereto or as otherwise agreed shall be paid in cash and due immediately upon attachment of the risk; and the Company shall be entitled to premium on all shipments covered by the Policy, whether reported or not.

**35)  DECLARATIONS**

The ASSURED by the acceptance of this Policy warrants and agrees to report all shipments in respect of which insurance is provided hereunder to the Company, or the office of the Starr Marine Agency of California which issued this policy as soon as known to the ASSURED, or as soon thereafter as may be practicable. Should the ASSURED willfully fail to report shipments covered by this Policy, then the Policy as to all subsequent shipments shall at the Company's option become null and void. The Company or its agents shall be permitted to examine the books, accounts and records of the ASSURED for the

ORIGINAL

purpose of tabulating and verifying all shipments in respect of which insurance is provided hereunder.

### 36)  NOTICE OF LOSS

Warranted by the ASSURED that all claims for loss of, or damage to, the goods and/or merchandise insured hereunder shall be promptly reported to VeriClaim or Lloyds Agent or the Company or to the office of the Starr Marine Agency of California that issued this policy.

### 37) PROOFS OF LOSS

As per CONTRACT REGARDING THE SETTLEMENT OF CLAIMS BY THE POLICY HOLDER PURSUANT TO THEIR OPEN CARGO POLICY.

Proofs of loss and all bills for expenses must be approved by the Settling Agent of this Company, if there be one at or near the place where the loss occurs or the expenses are incurred or, if there be none in the vicinity, by the Correspondent of the American Institute of Marine Underwriters, or the nearest accredited representative of Lloyd's, London, and such agent or correspondent must be represented on all surveys.

### 38)  NORMAL LOSS

In the event of claim under this insurance for loss of and/or damage to merchandise and/or goods upon which there is a normal or usual loss, it is hereby mutually agreed that the claim shall be adjusted and the insured value of the part or parts lost or damaged shall be arrived at in the adjustment of the claim on the basis of expected outturn, whether or not the deduction of normal loss be provided in this insurance or be a trade custom.

### 39)  PARTIAL LOSS

In all cases of partial loss or damage caused by perils insured against, the loss shall be determined by a separation of the damaged portion of the insured property from the sound portion, and the amount of loss determined by;

a) an agreed estimate (by survey) of the percentage of damage of such damaged portion, in which event the ASSURED will receive such percentage of the insured value of the damaged merchandise; or, if such agreement is not practicable,

b) then such damaged portion shall be sold either at public auction or by private sale (whichever the Company shall deem most advisable) for the account of the owner of the property, in which event the amount of the loss shall be the difference between the net amount so realized by the auction or sale and the insured value of the portion so sold.

### 40)  PAYMENT OF LOSS

In case of loss or other claim, such loss or claim to be paid in funds current in the United States to the ASSURED or order, or to bank, or bankers as their interests may appear, within thirty (30) days after submission to the Company or to its agent of proper proof of loss and proper proof of interest in the goods or merchandise so involved (the amount of premium, if unpaid, and all other indebtedness due the

ORIGINAL

Company by the ASSURED being first deducted). In the event that payment is required in other than United States currency, the rate of exchange shall be that in effect on the date the claim is settled.

## 41)  SUBROGATION

It is agreed that upon payment of any loss, the ASSURED shall assign and subrogate to this Company all their rights against carriers, bailees and other third parties to the extent of such payments and shall permit suit to be brought in the ASSURED'S name (but at this Company's expense), and the ASSURED further agrees to render all reasonable assistance in the prosecution of said suit or suits.

## 42)  IMPORT DUTY

If shown to have been included in the insured amount of Certificate(s) and or written contract(s), this insurance also covers subject to policy terms of Average, the risk of partial loss by reason of perils insured against on the duties imposed on goods imported into the United States and/or Canada and insured hereunder, it being understood and agreed, however, that when the risk upon the goods continues beyond the time of landing from the overseas vessel, the increased value, consequent upon the payment of such duties, shall attach as an additional insurance upon the goods from the time such duty is paid or becomes due, to the extent of the amount thereof actually paid or payable.  Any limit of liability expressed in this policy shall be applied separately to such increased value.

The ASSURED will, in all cases use reasonable efforts to obtain an abatement or refund of duties paid or claimed in respect of goods lost damaged or destroyed. It is further agreed that the ASSURED shall, when this Company elects, surrender the merchandise to the customs authorities and recover duties thereon as provided by law, in which event the claim under this policy shall be only for a total loss of the merchandise so surrendered and expenses.

This insurance on duty and/or increased value shall terminate at the end of the import movement covered under this policy (including the Warehouse to Warehouse and Marine Extension Clause if incorporated therein), but nothing contained in these clauses shall alter or affect any coverage granted elsewhere in the policy during the storage or transit subsequent thereto.

## 43) PACKING CLAUSE

Notwithstanding anything contained herein to the contrary it is agreed that where packing or preparation is undertaken by the Assured or their sub-contractors, Underwriters shall accept such packing or preparation as sufficient or suitable to protect the subject-matter insured against loss or damage and further to agree to waive rights of subrogation against the Assured or their sub-contractor.

23

ORIGINAL

## SCHEDULE OF RATES

Attached to and forming part of Policy No. CSF00022USA1 of the
**NATIONAL LIABILITY & FIRE INSURANCE COMPANY**
Dated: , April 1, 2007 issued to EGL EAGLE GLOBAL LOGISTICS INC.

(1) The following are the present rates of premium of this Company applying to Under Deck shipments on metal-hulled, self-propelled vessels which are not over 20 years of age nor less than 1000 net registered tons and which are classed A1 American Record or equivalent by a Member of the International Association of Classification Societies; or

(2) Vessels over 20 years of age which are approved by this Company, and which are not less than 1000 net registered tons and classed as in (1) above, but only while operating in their regular trades;

   but in either case excluding vessels built;
   (a) for service on the Great Lakes;
   (b) solely for military or naval service; or
   (c) for the carriage of dry bulk or liquid bulk cargoes, and which are more than 15 years of age,
  unless specifically approved by this Company.

Rates to be fixed by this Company at the time of declaration of risk for shipments not specified herein in respect of which insurance is provided under the policy.

The rates below are subject to change on thirty (30) days notice, except that we reserve the right to change rates for War and S.R. & C.C. on 48 hours notice.

All other terms and conditions remaining unchanged.

Dated: June 4, 20007      By: _(signature)_

               Authorized Representative

24

## SECTION I (b) CUSTOMER STORAGE INSURANCE   ORIGINAL

1) **GOODS INSURED.** This Section, subject to all its terms and conditions, covers goods and/or merchandise of shippers and/or customers who elect to purchase insurance on the goods and/or merchandise while stored in warehouses, and not in due course of transit, worldwide. **FOR THE ACCOUNT OF:**

   (a) Shippers and/or customers who elect to purchase insurance on goods and/or merchandise while stored in warehouses and not in due course of transit under a Bill of Lading or Waybill, solely as evidenced by Certificates issued via Starrmarine.com under Policy No. CSR00022USAI. If this Company is caused to pay any claim for loss of or damage to goods insured under an unauthorized Certificate (meaning a Certificate produced by means other than Starrmarine.com absent the express written consent of this Company), then the Assured shall reimburse this Company for said claim including loss adjustment expenses.

   (b) Shippers and/or customers who elect by written contract to purchase insurance on goods and/or merchandise stipulated by said contract, while stored in warehouses and not in due course of transit.

   EXCLUDING, in any event, any loss of or damage to goods from causes or perils that are not covered by the terms and conditions of this Section.

   Whether by Certificate or by written contract, EGL EAGLE GLOBAL LOGISTICS INC. may only offer Customer Storage Insurance within jurisdictions where EGL EAGLE GLOBAL LOGISTICS INC. has met any legal or regulatory requirement entailing licensing for the purpose of selling Shippers Interest Insurance.

2) **GOODS AND/OR MERCHANDISE AND/OR INTERESTS AND/OR LOCATIONS EXCLUDED**

   Unless expressly agreed in writing prior to attachment of risk [as to terms, conditions, limitations and premium, if any], the following are excluded:

   (a) Location(s) within Iraq [or any other country that this Company may put 'On Application' from time-to-time].

   (b) Accounts, bills, deeds, evidences of debt, letters of credit, passports, documents, railroad or other tickets, bullion, money, notes, securities, negotiable instruments, jewelry and precious stones, paintings, statuary or other works of art, or unlawful goods and/or contraband;

   (c) Gold, silver, platinum and any other precious metal or any alloy thereof; however, precious metals that are part of industrial or data processing equipment and machines are covered;

   (d) Live animals or live plants.

   (e) Any goods and/or merchandise to be stored subject to a temperature controlled or atmospheric controlled environment.

   (f) Any commodity or interest otherwise excluded in the EGL EAGLE GLOBAL LOGISTICS INC. insured contract for storage.

3) **INSURING TERMS.**

   Used ["used" means previously used for the purposes intended and not subsequently fully reconditioned] goods and/or used merchandise and/or used equipment are insured per 3(b) and not otherwise.

   (a) Covered goods are insured against All Risks of physical loss or damage from any external cause, irrespective of percentage.

25

(b) Used goods and/or used merchandise and/or used equipment are insured:

ORIGINAL

To cover loss or damage to goods stored which may reasonably be attributed to fire, lightning, sprinkler leakage, cyclones, hurricanes, earthquakes, floods (meaning the rising of navigable waters) and/or collapse or subsidence of loading docks.  Also to cover theft.

## 4) VALUATION.

(a) Valued at amount declared, as reflected in Certificate, but in no event for more than the amount of invoice, including all charges included in the invoice and including prepaid or advance freight and/or freight payable "vessel lost or not lost", not included in the charges included in the invoice, plus 20%, nor in any event for more than the applicable limit of liability of this policy; or,

(b) Valued at the amount established in written contract, but in no event for more than the amount of invoice, including all charges included in the invoice and including prepaid or advance freight and/or freight payable "vessel lost or not lost", not included in the charges included in the invoice, plus 20%, nor in any event for more than the applicable limit of liability of this policy;

(c) In the absence of an invoice, where an invoice would have been required to establish valuation, then valued at Actual Cash Value, with due deduction for depreciation, on the date and place of loss;

(d) Notwithstanding the foregoing, negotiable instruments shall be valued at the cost of reconstruction only, but in no event for more than the applicable limit of liability of this policy.

Foreign currency is to be converted into United States currency at Banker's sight rate of exchange on the date of issuance of each invoice and/or credit and/or draft.

## 5) DEDUCTIBLE. 
Each claim for loss or damage shall be adjusted separately, and from the amount of each separately adjusted claim the sum of $5,000. shall be deducted.  In the event that the relationship between EGL EAGLE GLOBAL LOGISTICS INC. and the depositor of the insured goods is such that a deductible is not incorporated in the insurance purchased by the depositor of the goods, and this Company is caused to adjust a claim without deductible application, then EGL EAGLE GLOBAL LOGISTICS INC. agrees to reimburse this Company for the full amount of any loss that this Company pays, including all loss adjustment expenses up to the amount of the deductible.  The Assured further agrees that all such reimbursements shall be due and payable to the Company, within 60 days of presentation to the Assured.

In the event of recovery on a claim that has been paid, the Assurers and the Assured shall share in the recovery in proportion to their respective interests in the claim.

## 6) EXCLUSIONS. 
This section does not insure loss of or damage to goods and/or merchandise caused by or resulting from:

(a) Unexplained loss, mysterious disappearance, or loss or shortage disclosed upon taking inventory;

(b) The infidelity or dishonesty of the Assured or any person or persons in the employment of the Assured, whether or not such act or acts occur during the regular hours of employment;

(c) Any process or work upon the property.

## 7) PROOFS OF LOSS

As per CONTRACT REGARDING THE SETTLEMENT OF CLAIMS BY THE POLICY HOLDER PURSUANT TO THEIR OPEN CARGO POLICY.

Proofs of loss and all bills for expenses must be approved by the Settling Agent of this Company, if there be one at or near the place where the loss occurs or the expenses are incurred or, if there be none in the vicinity, by the Correspondent of the American Institute of Marine Underwriters, or the nearest

accredited representative of Lloyd's, London, and such agent or correspondent must be represented on all surveys.

**8) CANCELLATION.** In the event of cancellation of the Policy to which this Section is attached, this insurance provided for hereunder shall terminate automatically as of the date of such cancellation.

Unofficial Copy Office of Chris Daniel District Clerk

27

ORIGINAL

## SECTION II

### (a) CARGO LEGAL LIABILITY

### (b) WAREHOUSEMAN'S LEGAL LIABILITY

ORIGINAL

Unofficial Copy Office of Chris Daniel District Clerk

## SECTION II (a) CARGO LEGAL LIABILITY

ORIGINAL

### 1) COVERING ON

This Section covers the legal and/or contractual liability of the ASSURED as a freight forwarder, customs broker, common or contract carrier, or non-vessel operating common carrier, under tariff, bill of lading, air waybill, shipping receipt, or written contract, issued by the ASSURED, for direct physical loss of or damage to shipments of lawful goods and/or merchandise of every description, being the property of others while such property is in the custody or control of the ASSURED and while in the custody of connecting carriers and/or subcontractors, except as hereinafter provided, all while in due course of transit. In consideration of the protection extended the Assured for connecting carriers and/or subcontractors, the ASSURED expressly agrees that:

(a) The Assured will take all reasonable steps to ascertain that each connecting carrier and/or subcontractor holds and maintains an insurance policy covering their cargo legal liability;

(b) The benefit of the protection of this Section shall not inure to the benefit of any connecting carrier or subcontractor or its insurers;

(c) The Assured will take all necessary steps to preserve recovery rights against all connecting carriers and/or subcontractors

The Assured's failure to keep the foregoing express agreements shall not prejudice the protection of this Section of this policy.

Notwithstanding the foregoing, in respect of used ["used" means previously used for the purposes intended and not subsequently fully reconditioned] goods and/or used merchandise and/or used equipment, this Section shall only cover the Assured's legal and/or contractual liability, as otherwise set forth in the preceding paragraphs, to the following extent:

To cover the Assured's legal liability, if any, to cargo for loss or damage which may reasonably be attributed to fire, collision or contact of the vessel and/or craft and/or conveyance with any external substance (ice included) other than water or to discharge at port of distress.

Also to cover the Assured's legal liability, if any, for theft, pilferage or non-delivery.

Also to cover the Assured's legal liability, if any, to cargo for loss or damage during land transportation and/or while on docks, wharves, or elsewhere on shore in conjunction with land transportation, for the risks of collision, derailment, overturning or other accident to the conveyance, fire, lightning, sprinkler leakage, cyclones, hurricanes, earthquakes, floods (meaning the rising of navigable waters) and/or collapse or subsidence of docks or wharves.

### 2) DEDUCTIBLE

Each claim for loss or damage, separately occurring, shall be adjusted separately and from the amount of each adjusted claim the sum of $5,000. shall be deducted.

In the event of recovery on a claim that has been paid, the Assurers and the Assured shall share in the recovery in proportion to their respective interests in the claim.

29

ORIGINAL

**3) INTERNATIONAL CONVENTION OR NATIONAL LAW**

(a) This Section is extended to cover the Assured for its legal liability arising from:

(i) The current national association standard terms and conditions in the country of its operation and as applicable to the legal liability provisions otherwise covered by this Section; and/or,

(ii) Any International Convention or National Law that is applicable to the legal liability provisions otherwise covered by this Section.

(b) This Section is further extended, but only in respect to the provisions of clause (a) to cover the Assured's legal liability for consequential loss [meaning financial loss incurred by the Assured's customer as a consequence of and resulting directly from the physical loss of or damage to goods, or delay in the delivery of goods] provided always that the legal liability of the Assured for physical loss of or damage to goods, or delay in delivery of goods has been established and the claim admitted by these Assurers and only where the Assured is legally liable for such financial loss in terms of current national association standard terms [per (a)(i)] or any International Convention or National Law [per (a)(ii)].

In respect of consequential loss, it is further understood and agreed that the Assured shall bear a deductible of $20,000. each and every occurrence.

In the event of recovery on a claim that has been paid, the Assurers and the Assured shall share in the recovery in proportion to their respective interests in the claim.

**4) GOODS AND/OR MERCHANDISE AND/OR INTERESTS AND/OR TERRITORIES EXCLUDED**

Unless expressly agreed in writing prior to attachment of risk [as to terms, conditions, limitations and premium, if any], the following are excluded:

(a) Any shipment, regardless of origin or destination, while within the country borders of Iraq [or any other country that this Company may put 'On Application' from time-to-time].

(b) Household goods or personal effects owned by individual(s), except that this exclusion shall not apply to household goods and personal effects (professionally crated) of Military personnel.

(c) Accounts, bills, deeds, evidences of debt, letters of credit, passports, documents, railroad and other tickets, bullion, money, currency, notes, securities, negotiable instruments, precious stones, paintings, statuary or other works of art, live plants, or unlawful goods and/or contraband.

(d) Excepting for jewelry (as otherwise covered herein) gold, silver, platinum and any other precious metal or any alloy thereof; however, precious metals that are part of industrial or data processing equipment and machines are covered.

(e) Live animals or live plants.

(f) Any property carried gratuitously or as an accommodation.

(g) Any shipment and/or commodity and/or interest that is excluded in EGL tariff, bill of lading, waybill, or contract.

**5) LIABILITY EXCLUDED**

This Section does not insure the Assured's liability for loss, damage or expense caused by or resulting from:

(a) Defamation, libel and/or slander;

(b) Punitive and/or exemplary damages awarded against the Assured or any person for whose conduct the Assured is liable;

(c) The insolvency of the Assured;

30

(d) Delay, loss of market, indirect or consequential loss of any kind (except as specifically provided for herein);

(e) Duty and/or Customs fines or penalties;

(f) Oral contracts and/or alleged liability for which there is no showing of there having been an applicable bill of lading, air waybill, shipping receipt or written contract;

(g) Inherent vice;

(h) The infidelity or dishonesty of the Assured or any person or persons in the employment of the Assured, whether or not such act or acts occur during the regular hours of employment;

(i) Infestation by insects or vermin, dryness or dampness of the atmosphere or freezing or other extremes of temperature, corrosion or rust, or by being contaminated, scented, discolored, molded, rotted, soured, steamed, heated or changed in texture or flavor, unless such loss is caused directly by (1) fire, lightning or windstorm, (2) earthquake or flood, (3) explosion, (4) collapse or a bridge, dock, culvert or wharf, (5) complete upset and overturn or a transporting vehicle, (6) derailment, (7) collision or crashing of an aircraft.

(j) Any provision(s) of International Convention(s) or National Law(s) that prove to be beyond the scope of protection provided by this Section of this Policy.

## 6) VALUATION

Property shall be valued at the amount of invoice or, if not under invoice, then at cash market value on date and at point of shipment, except, however, the liability of the Company shall not exceed the value as shown in tariff documents, bills of lading, written contracts, or shipping receipts, if any, nor shall the Company's liability in any event exceed what it would cost to repair or replace the property lost or damaged with other of like kind and quality.

## 7) EXCLUSION CLAUSE

This Section does not cover the liability of the Assured for the payment of any fines, assessments, damages, attorney's fees, court costs or any other penalties which the Assured shall be required to pay as a result of violation, solely on account of the Assured's own actions or omissions, of any law or regulation relating to any delay in the payment, denial or settlement of any claim for loss.

## 8) FILING INDEMNITY

The Policy within which this clause resides is a cargo liability insurance policy, and is hereby amended to assure compliance by the Assured, as a common carrier of property by motor vehicle, with statutory requirements of any Federal, State or Provincial agency, with reference to making compensation to shippers or consignees for all property belonging to shippers or consignees coming into the possession of such carrier in connection with its transportation service under certificate of public convenience and necessity, or similar instrument, issued to the Assured by any Federal, State or Provincial agency, or otherwise in transportation in intrastate, interstate or foreign commerce subject to applicable section of statute, and with the pertinent rules and regulations of any Federal, State or Provincial agency.

In consideration of the premium stated in the Policy within which this clause resides, the Assurers hereby agree to pay, within the limits of liability hereinafter provided, any shipper or consignee for all loss of or damage to all property belonging to such shipper or consignee, and coming into the possession of the Assured in connection with such transportation service, for which loss or damage the Assured may be held legally liable, regardless of whether the motor vehicles, terminals, warehouses, and other facilities used in connection with the transportation of the property hereby insured are specifically described in the Policy or not. The liability of these Assurers extends to such losses or damages whether occurring on the route or in the territory authorized to be served by the Assured or elsewhere.

Within the limits of liability hereinafter provided it is further understood and agreed that no condition,

31



provision, stipulation, or limitation contained in the Policy, or any other endorsement thereon or violation thereof, or of this clause by the Assured, shall affect in any way the right of any shipper or consignee, or relieve these Assurers from liability for the payment of any claim arising out of such transportation service for which the Assured may be held liable to compensate shippers or consignees, irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the Assured. However, all terms, conditions, and limitations in the Policy within which this clause resides are to remain in full force and effect as binding between the Assured and these Assurers. The Assured agrees to reimburse these Assurers for any payment made by these Assurers on account of any loss or damage involving a breach of the terms of the Policy and for any payment that these Assurers would not have been obligated to make under the provisions of this Policy, except for the agreement contained in this clause.

The liability of these Assurers for the limits provided in this clause shall be a continuing one notwithstanding any recovery hereunder. These Assurers shall not be liable for an amount in excess of the applicable statutorily prescribed limit in respect of all losses or damages to property hereby insured carried on any one motor vehicle, nor in any event for an amount in excess of the applicable statutorily prescribed limit in respect to any loss or damage to or aggregate of losses or damages of or to such property occurring at any one time and place.

Whenever requested by appropriate Federal, State or Provincial agency, these Assurers agree to furnish to said agency a duplicate original of said Policy and all endorsements thereon. This clause may not be cancelled without cancellation of the Policy within which it resides. Such cancellation may be effected by these Assurers or the Assured giving thirty (30) days' notice in writing to the proper agency(ies) at their designated offices, said thirty (30) days' notice to commence to run from the date notice is actually received at the offices of the proper agency(ies).

Notwithstanding anything to the contrary in the foregoing, this clause shall only pertain in respect to the named jurisdictions to which this Company has actually issued a cargo liability filing for the corresponding named entity, said filing having been accepted by said jurisdiction, as listed in endorsement to this policy. In the event that any cargo liability filing is cancelled, the fact and documentation of said cancellation shall prevail whether or not it is so reflected in endorsement to this policy.

## 9) NOTICE OF LOSS

As per CONTRACT REGARDING THE SETTLEMENT OF CLAIMS BY THE POLICY HOLDER PURSUANT TO THEIR OPEN CARGO POLICY.

It shall be necessary for the Assured to give such written notice of any occurrence or claim, in excess of the applicable deductible, within one year from the date of expiration or cancellation of this Section or such claim shall be invalidated.

## 10) SUITS AGAINST ASSURED

If suit is brought against the Assured to enforce a claim under this policy, the Assured shall immediately forward to the Company every summons or other process as soon as the same shall have been served on the Assured, and the Company may, at its own cost, defend such suit in the man of and on behalf of the Assured.

The Assured, whenever requested by the Company, shall aid in effecting settlements, securing information and evidence, the attendance of witnesses and in prosecuting appeals, but the Assured shall not voluntarily assume any liability for an amount in excess of the applicable deductible without the written consent of the Company.



**11) THIRD PARTIES**

URIGINAL

As per CONTRACT REGARDING THE SETTLEMENT OF CLAIMS BY THE POLICY HOLDER PURSUANT TO THEIR OPEN CARGO POLICY.

The Company, for its interest, reserves the right to adjust any claim hereunder with the owner(s) of property, and the payment to such owners or to the joint order of the Assured and to such owners of the amount due from this Company for property lost or damaged shall be in full satisfaction of the claim of the Assured for such loss.

The Assured, whenever requested by the Company, shall aid in effecting settlements, securing information as evidence, the attendance of witnesses and in prosecuting appeals, but the Assured shall not voluntarily assume or admit any liability or interfere in any negotiations for settlement, or in any legal proceedings, or incur any expense, or settle any claim except at the Assured's own cost without due written consent of the Company previously given.

**12)   SUIT AGAINST COMPANY**

a.  No action shall lie against the Company unless, a condition precedent thereto, the Assured shall have fully complied with all the terms of this Section, nor until the amount of the Assured's obligation to pay shall have been finally determined either by judgment against the Assured after actual trial or by written agreement of the Assured, the claimant and the Company.

b.  Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Section to the extent of the insurance afforded by this Section.

c.  Nothing contained in this Section shall give any person or organization any right to join the Company as a codefendant in any action against the Assured.

d.  Bankruptcy or insolvency of the Assured or of the Assured's estate shall not relieve the Company of any of its obligations hereunder.

Unofficial Copy Office of Chris Daniel District

33

ORIGINAL

## SECTION II (b) WAREHOUSEMAN'S LEGAL LIABILITY

### 1) COVERING ON

In consideration of premium charges herein provided and subject to the following terms, conditions and limitations, this Company agrees:

a. To pay on behalf of the Assured all sums which the Assured shall become legally and/or contractually obligated to pay by reason of liability imposed upon him as a warehouseman or bailee, under a warehouse receipt or written contract, issued by the Assured, for loss or destruction of or damage to personal property of others contained in any premises owned, leased or operated by the Assured, occurring while this Section remains in full force and effect;

It is further agreed that if the Assured should fail or refuse to settle any claim as authorized by the Company, the liability of the Company, subject otherwise to the applicable Limit of Liability, shall be limited to the amount for which settlement could have been made.

b.  1. To investigate all claims for such loss, destruction or damage of which the Company shall have notice as hereinafter required;

2.  To defend in the Assured's name and behalf, any suits or other proceedings which may be brought against the Assured to enforce such claims even if such suits are groundless, false or fraudulent, but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient whether such claim exceeds policy deductible or not.

3.  To pay, subject to the Limits of Liability otherwise specified herein: (i) the expense of adjusting all such claims or suits which may have been settled at the option of the Company without litigation; (ii) all expense of litigation and all costs taxed against the Assured in proceedings defended by the Company, including all premiums for appeal bonds, but without any obligation to apply for or furnish such bonds; and if bond be required to release attachment of the Assured's property, the premium on that portion thereof which secures payment of an amount not in excess of the Company's applicable Limit of Liability hereunder; (iii) all interest occurring after entry of judgment until the Company has paid, tendered, or deposited in court such part of such a judgment as does not exceed the Company's applicable limit of liability thereon.

Notwithstanding the foregoing, in respect of used ["used" means previously used for the purposes intended and not subsequently fully reconditioned] goods and/or used merchandise and/or used equipment, this Section shall only cover the Assured's legal and/or contractual liability, as otherwise set forth in the preceding paragraphs, to the following extent:

To cover the Assured's legal liability, if any, to goods stored for loss or damage which may reasonably be attributed to fire, lightning, sprinkler leakage, cyclones, hurricanes, earthquakes, floods (meaning the rising of navigable waters) and/or collapse or subsidence of loading docks.

Also to cover the Assured's legal liability, if any, for theft.

34

ORIGINAL

## 2) INTERNATIONAL CONVENTION OR NATIONAL LAW

(a) This Section is extended to cover the Assured for its legal liability arising from:

    (i) The current national association standard terms and conditions in the country of its operation and as applicable to the legal liability provisions otherwise covered by this Section; and/or,

    (ii) Any International Convention or National Law that is applicable to the legal liability provisions otherwise covered by this Section.

(b) This Section is further extended, but only in respect to the provisions of clause (a) to cover the Assured's legal liability for consequential loss [meaning financial loss incurred by the Assured's customer as a consequence of and resulting directly from the physical loss of or damage to goods, or delay in the delivery of goods] provided always that the legal liability of the Assured for physical loss of or damage to goods, or delay in delivery of goods, has been established and the claim admitted by these Assurers and only where the Assured is legally liable for such financial loss in terms of current national association standard term [per (a)(i)] or any International Convention or National Law [per (a)(ii)].

In respect of consequential loss, it is further understood and agreed that the Assured shall bear a deductible of $20,000. each and every occurrence.

In the event of recovery on a claim that has been paid, the Assurers and the Assured shall share in the recovery in proportion to their respective interests in the claim.

## 3) DEDUCTIBLE

Each claim for loss or damage, separately occurring, shall be adjusted separately and from the amount of each adjusted claim the sum of $5,000. shall be deducted.

In the event of recovery on a claim that has been paid, the Assurers and the Assured shall share in the recovery in proportion to their respective interests in the claim.

## 4) GOODS AND/OR MERCHANDISE AND/OR INTERESTS AND/OR LOCATIONS EXCLUDED

Unless expressly agreed in writing prior to attachment of risk [as to terms, conditions, limitations and premium, if any], the following are excluded:

    (a) Location(s) within the country borders of Iraq [or any other country that this Company may put 'On Application' from time-to-time].

    (b) Household goods or personal effects owned by individual(s), except that this exclusion shall not apply to household goods and personal effects (professionally crated) of Military personnel.

    (c) Accounts, bills, deeds, evidences of debt, letters of credit, passports, documents, railroad or other tickets, bullion, money, currency, notes, securities, negotiable instruments, jewelry and precious stones, paintings, statuary or other works of art, live plants, or unlawful goods and/or contraband.

    (d) Excepting for jewelry (as otherwise covered herein) gold, silver, platinum and any other precious metal or any alloy thereof; however, precious metals that are part of industrial or

35

ORIGINAL

data processing equipment and machines are covered.
  (e) Live animals or live plants.
  (f) Any property stored gratuitously or as an accommodation.
  (g) Any property in due course of transit and not under a warehouse receipt or warehouse legal liability contract.
  (h) Any goods and/or merchandise to be stored subject to a temperature controlled or atmospheric controlled environment.
  (i) Any commodity or interest otherwise excluded in the EGL Warehouseman's Legal Liability contract for storage.

## 5) LIABILITY EXCLUDED

This Section does not insure the Assured's liability for loss, damage or expense caused by or resulting from:

  (a) Defamation, libel and/or slander;
  (b) Punitive and/or exemplary damages awarded against the Assured or any person for whose conduct they are liable;
  (c) The insolvency of the Assured;
  (d) Any process or work upon the property, unless fire or explosion ensues and then only for the Assured's legal liability, if any, for the ensuing fire or explosion;
  (e) Delay, loss of market, indirect or consequential loss or any kind (except as specifically provided for herein);
  (f) Oral contracts and/or alleged liability for which there is no showing of there having been an applicable warehouse receipt or written contract;
  (g) Any circumstance whereby property of others is in the care, custody or control of the Assured while acting as carrier for hire;
  (h) Any circumstance whereby property of others is in the Assured's premises and the Assured's relationship to the owner or storer of such property is that of the lessor;
  (i) The infidelity or dishonesty of the Assured or any person or persons in the employment of the Assured, whether or not such act or acts occur during the regular hours of employment;
  (j) Any fraudulent scheme, trick, device or false pretense practiced upon the Assured or its employees;
  (k) Inherent vice, gradual deterioration, latent defect or natural condition of the property; or vermin, bacteria, molds, insects, weevils or other infestations; or fumigation; or contamination;
  (l) Unexplained loss, mysterious disappearance, or loss or shortage disclosed upon taking inventory;

## 6) EXCLUSION CLAUSE

This Section does not cover the liability of the Assured for the payment of any fines, assessments, damages, attorney's fees, court costs or any other penalties which the Assured shall be required to pay as a result of violation, solely on account of the Assured's own actions or omissions, of any law or regulation relating to any delay in the payment, denial or settlement of any claim for loss.

ORIGINAL

### 7) NOTICE OF LOSS

As per CONTRACT REGARDING THE SETTLEMENT OF CLAIMS BY THE POLICY HOLDER PURSUANT TO THEIR OPEN CARGO POLICY.

It shall be necessary for the Assured to give such written notice of any occurrence or claim, in excess of the applicable deductible, within one year from the date of expiration or cancellation of this Section or such claim shall be invalidated.

### 8) SUITS AGAINST ASSURED

The Assured, whenever requested by the Company, shall aid in effecting settlements, securing information and evidence, the attendance of witnesses and in prosecuting appeals, but the Assured shall not voluntarily assume any liability for an amount in excess of the applicable deductible without the written consent of the Company.

### 9) THIRD PARTIES

As per CONTRACT REGARDING THE SETTLEMENT OF CLAIMS BY THE POLICY HOLDER PURSUANT TO THEIR OPEN CARGO POLICY.

The Company, for its interest, reserves the right to adjust claims with the owners of the property and to make payment to such owners of the amount due for the liability of the Assured for property lost or damaged.

### 10)   SUIT AGAINST COMPANY

a. No action shall lie against the Company unless, a condition precedent thereto, the Assured shall have fully complied with all the terms of this Section, nor until the amount of the Assured's obligation to pay shall have been finally determined either by judgment against the Assured after actual trial or by written agreement of the Assured, the claimant and the Company.

b. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Section to the extent of the insurance afforded by this Section.

c. Nothing contained in this Section shall give any person or organization any right to join the Company as a codefendant in any action against the Assured.

d. Bankruptcy or insolvency of the Assured or of the Assured's estate shall not relieve the Company of any of its obligations hereunder.

### 11)   INSPECTION

The Assured agrees that any authorized representative of this Company shall be permitted to inspect any property used in conjunction with the Assured's warehouse business at all reasonable times during the life of this Section.  Such inspection(s) shall not waive or in any manner affect any of the terms, conditions limitations of this Section.

ORIGINAL

**12)   CANCELLATION**

If this Policy be cancelled, then the coverage afforded under this Section is terminated on the effective date of Policy cancellation.

Unofficial Copy Office of Chris Daniel District Clerk

ORIGINAL

## STRIKES, RIOTS AND CIVIL COMMOTIONS ENDORSEMENT (FORM 11)

APPLICABLE TO THE MARINE OPEN POLICY

Unofficial Copy Office of Chris Daniel District Clerk

ORIGINAL

## AIMU
Endorsement for Open Policies (Cargo)
Strikes, Riots & Civil Commotions
(March 1, 2002)

To be attached to and form a part of Policy No. CSF00022USA1 of National Liability & Fire Insurance Company

Insuring  EGL EAGLE GLOBAL LOGISTICS INC.

S.R. & C. C. Endorsement (Form No. 11)

THIS INSURANCE ALSO COVERS:

(1)  Physical loss of or damage to property insured directly caused by strikers, locked-out workmen, or persons taking part in labor disturbances or riots or civil commotions;

(2)  Physical loss of or damage to the property insured directly caused by vandalism, sabotage or malicious acts; and,

(3)  Physical loss of or damage to the property insured directly caused by the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional; PROVIDED that any claim to be recoverable under this subsection (3) be not excluded by the F.C. & S. Warranty in the Policy to which this endorsement is attached. Notwithstanding the foregoing, coverage under this subsection (3) is conditional upon the property insured being in the ordinary course of transit and, in any event, shall terminate:

   (a)  As per the Warehouse to Warehouse Clause, Marine Extension Clause, 60 Day South American Clause and any other clauses relating to duration of transit contained in or endorsed onto the Policy; or,

   (b)  on delivery to the consignee's or other final warehouse or place of storage at the destination named herein; or,

   (c)  on delivery to any warehouse or place of storage whether prior to or at the destination named herein, which the Assured elects to use, either for storage other than in the ordinary course of transit or for allocation or distribution; or,

   (d)  in respect of marine transits, on the expiry of 60 days after completion of discharge overside of the property insured from the vessel at the port of discharge; or,

   (e)  in respect of air transits, on the expiry of 30 days after unloading the property insured from the aircraft at the place of discharge;

   whichever shall first occur.

While the property insured is at risk under the terms and conditions of this insurance within the United States of America, the Commonwealth of Puerto Rico, the U.S. Virgin Islands and Canada, this insurance is extended to cover physical loss of or damage to the property insured directly caused by acts committed by an agent of any government, party or faction engaged in war, hostilities or other warlike operations, provided such agent is acting secretly and not in connection with any operation of military or naval armed forces in the country where the described property is situated.

Nothing in this endorsement shall be construed to cover any loss, damage or expense directly or indirectly arising from, contributed to or caused by any of the following, whether due to a peril insured against or otherwise:

   (a)      change in temperature or humidity;

   (b)      the absence, shortage, or withholding of power, fuel, or labor of any description whatsoever during any strike, lockout, labor disturbance, riot or civil commotion;

   (c)      loss of market or loss, damage or deterioration arising from delay;

40

ORIGINAL

(d)        hostilities, warlike operations, civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, except to the limited extent that the acts of certain agents acting secretly have been expressly covered above; or,

(e)        nuclear reaction, radiation or radioactive contamination.

The Assured agrees to report all shipments attaching under this cover and to pay premiums therefore at the rates established by the Assurer from time to time.

This endorsement may be canceled by either party upon forty-eight hours written, telegraphic or telephonic notice to the other party, but such cancellation shall not affect any risks which have already attached hereunder.

Effective with respect to shipments made on or after April 1, 20007

All other terms and conditions remain unchanged.

Dated: June 4, 2007                    STARR MARINE AGENCY OF CALIFORNIA
                                        By

Unofficial Copy Office of Chris Daniel District Clerk

41

ORIGINAL

## FREIGHT FORWARDER'S ERRORS & OMISSIONS LIABILITY

This Section will indemnify the Assured in respect of its legal liability for a negligent act, error or omission, arising out of the Insured Operations as a Freight Forwarder, Common or Contract Carrier, Non-Vessel Owning Common Carrier or Air Carrier subject to the following General Terms, Conditions and Exclusions.

### 1) DEDUCTIBLE

$125,000. per incident or occurrence.

### 2) GENERAL

Liability for a negligent act, error or omission by the Assured, its servants, agents whilst acting within the scope of their duty or authority carrying out the legitimate business operations of the Assured, arising out of the following:-

(a) preparation and/or issuance of documentation;
(b) clerical and/or documentary procedures;
(c) failure to follow and/or provide instructions;
(d) provision of advice or information;
(e) delay, misdelivery or wrongful delivery of cargo;
(f) declaration or description of cargo;
(g) risks referred to under clause 3.1-3.3 inclusive but subject to their terms and conditions.

### 3) SPECIAL PROVISIONS

Cover under Clause 2 above is subject to the specific terms and conditions, when applicable as set out below:-

#### 3.1 Bills of Lading

Liability resulting from deviation and/or incorrect information on a bill of lading/waybill or similar contract of carriage is covered, including but not limited to:-

a) Pre- or post-dating of the bill of lading/waybill or similar contract of carriage;
b) unlawful or unreasonable deviation from the contractual voyage;
c) on deck stowage contrary to contract of carriage;
d) incorrect information as regards:-
  i ) port of loading;
  ii ) port of discharge;
  iii ) voyage route;
  iv ) carrying vessel;
  v ) description of cargo, weight, number and/or quality;
  vi ) received for shipment or shipped on board date.

e) Delivery of cargo without production of an original bill of lading or similar document, (duly endorsed as appropriate) or delivery to an unauthorized or unentitled person.

43

ORIGINAL

### 3.2 Customs Information
Liability arising out of the provision of information or documentation to a Custom's Authority or similar governmental organization, or body, or arising out of the provision of a bond or customs guarantee or other bond or guarantee for use by the Insured or in connection with a transport arranged by the Insured.

### 3.3 Cargo Insurance: applicable to Shippers Interest Policy
Liability arising from any written agreement to arrange or procure cargo insurance for a customer is covered, provided that the Assured also has a valid Open Cover Cargo Policy.

## 4) FINES AND PENALTIES

Notwithstanding the limitation of Assured's liability stipulated in the Policy Declarations,
where such financial loss is the result of fines or other penalties including but not limited to customs duty, sales or excise tax or similar fiscal charge, claimed, or levied against the Assured's customer by a recognized and legitimate authority as a result of an unintentional error and omissions of the Assured, the liability of Insurers in respect of all such fines or other penalties is further sub-limited as stipulated in the Policy Declarations each and every accident.

## 5) OTHER EXCLUSIONS
a) Liability for delay when increased by special instructions from a customer.
b) Intentional, reckless or willful misconduct by the insured, their servants or agents.
c) Bodily Injury liability.
d) Liability arising from gross negligence and/or willful misconduct.

## 6) LIMIT OF LIABILITY
This Company shall not be liable for more than the amount shown in Policy Declarations.

## 7) NOTICE OF LOSS

As per CONTRACT REGARDING THE SETTLEMENT OF CLAIMS BY THE POLICY HOLDER PURSUANT TO THEIR OPEN CARGO POLICY.

It shall be necessary for the Assured to give such written notice of any occurrence or claim, in excess of the applicable deductible, within one year from the date of expiration or cancellation of this Section or such claim shall be invalidated.

## 8) SUITS AGAINST ASSURED

The Assured, whenever requested by the Company, shall aid in effecting settlements, securing information and evidence, the attendance of witnesses and in prosecuting appeals, but the Assured shall not voluntarily assume any liability for an amount in excess of the applicable deductible without the written consent of the Company.

44

ORIGINAL

### 9) THIRD PARTIES

As per CONTRACT REGARDING THE SETTLEMENT OF CLAIMS BY THE POLICY HOLDER PURSUANT TO THEIR OPEN CARGO POLICY.

The Company, for its interest, reserves the right to adjust claims with the owners of the property and to make payment to such owners of the amount due for the liability of the Assured for the protection provided by this Section of the policy.

ORIGINAL

**WAR RISK OPEN POLICY -- CSF00022USA1WR**
**APPLICABLE TO SECTIONS I(a) and II(a) of the MARINE OPEN POLICY**

Unofficial Copy Office of Chris Daniel District Clerk

ORIGINAL

**American Institute (AIMU)**
**WAR RISK OPEN POLICY (CARGO)**

**NATIONAL LIABILITY & FIRE**
**INSURANCE COMPANY**

**(DECEMBER 2, 1993)**

Policy No. CSF00022USA1WR - Applicable only to SECTIONS I (a) and II(a) of the Marine Open Policy

THIS POLICY OF INSURANCE WITNESSETH, that in consideration of premiums as agreed to be paid, the Assurer does make insurance and cause EGL EAGLE GLOBAL LOGISTICS INC. to be insured, lost or not lost, for account of whom it may concern, against War Risks only, in accordance with the terms and conditions hereinafter set forth.

To apply to shipments made on or after April 1, 2007,
This Company shall not be liable hereunder for more than $30,000,000. by any one vessel, nor for more than $30,000,000. by any one aircraft.
In cases where the total value(s) at risk on any one vessel exceed(s) the limit of liability as set forth in this Policy, the Assured agrees, nevertheless, to report to the Assurer full value(s) at risk and to pay premium thereon at the agreed rates. The Assured further agrees that acceptance of such reports and premium by the Assurer shall not serve to revoke or to overrule the limit of liability set forth in this Policy; however, subject to the limit of liability, the Assurer in accepting these reports does agree to pay partial losses covered by this Policy without reduction by reason of any coinsurance which otherwise may have existed in the absence of this special agreement.

Subject to the provisions of Clause 4 of this Policy, should there be an accumulation of interests exceeding the above limit of liability by reason of any interruption of transit beyond the control of the Assured or by reason of any casualty, and/or after the interests have been discharged from the incoming overseas Vessel at an intermediate port or place for on-carriage from that or any other port or place by another overseas Vessel, and/or on the on-carrying overseas Vessel, this Policy shall attach for the full amount at risk (but in no event for more than twice the Policy limit which would be applicable to any one Vessel) provided written notice be given to this Assurer as soon as known to the Assured.

This Policy shall cover only those shipments which are insured against marine risks and/or under the protection of cargo legal liability under SECTIONS I (a) and II (a) of Policy No. CSF00022USA1 of this Company, it being agreed that the description of such shipments, the valuations thereof, the voyage, the designation of the overseas Vessel (which shall be construed to include aircraft if included under the marine policy) on which the goods are to be carried and the ports and/or places of loading and discharge, as reported under the said Policy against marine risks, shall be deemed incorporated herein. Notwithstanding the foregoing, this policy shall not cover purely domestic shipments by air between points in the United States of America (excluding Alaska and Hawaii).

Any loss payable hereunder shall be payable in funds current in the United States, to the order of Assured or Order thirty days after full proofs of loss and proofs of interest have been filed with the Assurer.

1.(a) This insurance is only against the risks of capture, seizure, destruction or damage by men-of-war, piracy, takings at sea, arrests, restraints, detainments and other warlike operations and acts of kings, princes and peoples in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, or civil strife arising therefrom; the imposition of martial law, military or usurped power, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes. Warranted not to abandon (on any ground other than physical damage to ship or cargo) until after condemnation of the property insured.

(b) This insurance also covers, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under this Policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

2. Warranted free from any claim based upon loss of, or frustration of, the insured voyage or adventure caused by arrests, restraints or detainments.

3. This insurance does not cover any loss, damage or expense directly or indirectly arising from, contributed to, or caused by any of the following, whether due to a peril insured against or otherwise:

(a) Commandeering, preemption, requisition or nationalization by the government (defacto or otherwise) of the country to or from which the goods are insured.

(b) Seizure or destruction under quarantine, environmental or customs regulations.

(c) Delay, deterioration and/or loss of market.

(d) Nuclear reaction, radiation or radioactive contamination, regardless of how it was caused.

47

ORIGINAL

4. (a) The insurance against the risks enumerated in Clause 1, except the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged referred to in (b) below, shall not attach to the interest hereby insured or to any part thereof:

(i) prior to being on board an overseas Vessel (For the purpose of this Clause 4 an overseas Vessel shall be deemed to mean a Vessel carrying the interest from one port or place to another where such voyage involves a sea passage by that Vessel);

(ii) after being discharged overside from an overseas Vessel at the intended port or place of discharge,

or

after the expiry of 15 days from midnight of the day of arrival of the overseas Vessel at the intended port or place of discharge, whichever shall first occur;

(iii) after expiry of 15 days from midnight of the day of arrival of the overseas Vessel at an intermediate port or place to discharge the interest for on-carriage from that or any other port or place by another overseas Vessel, but shall reattach as the interest is loaded on the on-carrying overseas Vessel. During the said period of 15 days the insurance remains in force whether the interest is awaiting transit or in transit between the overseas Vessels.

(iv) For the purposes of this Clause 4 arrival at the intended port or place of discharge shall be deemed to mean that time when the overseas Vessel first berths, anchors, moors or is secured in an area subject to regulation by the authorities of such port or place.

(b) The insurance against the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged, attaches as the interest hereby insured is first loaded on a lighter, craft or vessel after leaving the warehouse at point of shipment in transit for the destination declared hereunder, and ceases to attach as the interest is finally landed from the vessel, craft or lighter prior to delivery to warehouse at such destination.

(c) If the contract of affreightment is terminated at a port or place other than the destination named therein such port or place shall be deemed the intended port or place of discharge for the purpose of this Clause 4.

(d) Shipments by mail, if covered by this Policy, are insured continuously from the time of leaving the sender's premises until delivered to the place of address.

(e) Shipments by air (other than by air mail), if covered by this Policy are insured subject to the same terms and conditions as shipments by overseas Vessel.

(f) It is a condition of this insurance that the Assured shall act with reasonable dispatch in all circumstances within their control.

(g) If anything contained in this Policy shall be inconsistent with this Clause 4 it shall to the extent of such inconsistency be null and void.

5. This insurance shall not be vitiated by deviation, overcarriage, change of voyage, or by any error or unintentional omission in the description of interest, vessel or voyage, provided the same be communicated to the Assurer as soon as known to the Assured and an additional premium paid if required.

6. And in case of any loss or misfortune, it shall be lawful and necessary to and for the Assured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said goods, and merchandises, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or Assurers, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of an abandonment; and to the charges whereof, the said Assurers will contribute according to the rate and quantity of the sum hereby insured.

7. General Average and Salvage Charges payable according to United States laws and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

8. It is agreed that the reports of shipments made under the Policy against marine risks mentioned above shall be deemed to be reports under this Policy also, and the Assured agrees to pay premiums on all shipments insured under this Policy at the war risk rates of the Assurer as fixed from time to time.

9. No claim shall be payable hereunder which arises from collision, contact with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather or fire unless caused directly (and independently of the nature of the voyage or service which the Vessel concerned or, in the case of a collision, any other Vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purpose of this paragraph "power" includes any authority maintaining naval, military or air forces in association with a power.

10. No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value if the expenditure had been incurred.

48

ORIGINAL

11. It is agreed that this Policy is a separate and wholly independent contract and is not subject to any terms or conditions of the Policy against marine risks above mentioned (whether physically attached thereto or not) except as such terms or conditions shall have been expressly incorporated herein by reference.

12. This insurance may be cancelled by either party upon forty-eight hours written, telegraphic or telefaxed notice to the other party, but such cancellation shall not affect any shipment on which this insurance has attached under the terms of Clause 4 hereof prior to the effective date of such notice.  Shipments on which this insurance has not so attached but for which, prior to the effective date of such notice, bills of lading have been issued and (in the case of exports) Certificates or special policies have been issued and negotiated, shall be covered from the time of loading on the overseas Vessel, as provided in Clause 4, at the rates of the Assurer, provided that, prior to said effective date, such shipments were at the risk of the Assured and were covered under the said Policy against marine risks.

In the event of loss which may give rise to a claim under this Policy, prompt notice shall be given to the Company.

This Policy shall not be valid unless countersigned by a duly authorized representative of the Company.


Secretary                              President


Countersigned at San Francisco, CA
This 4th day of June, 2007___

By:

Authorized Representative

Unofficial Copy Office of Chris Daniel District Clerk

49

ORIGINAL

**ENDORSEMENT NO. 1**
**Cargo Liability Filings**

**Effective Date: April 1, 2007**

Herein below are listed the named jurisdictions for cargo liability filings, in accordance with
Clause 8, FILING INDEMNITY, for Section II (a) CARGO LEGAL LIABILITY, of this Policy.

| Entity | Form | Jurisdiction |
|---|---|---|
| EGL Eagle Global Logistics, LP | H | Alabama |
| SCG, The Select Carrier Group, L.P. | H | Alabama |
| EGL Eagle Global Logistics, LP | H | Colorado |
| SCG, The Select Carrier Group, L.P. | H | Colorado |
| EGL Eagle Global Logistics, LP | H | Illinois |
| SCG, The Select Carrier Group, L.P. | H | Illinois |
| EGL Eagle Global Logistics, LP | H | Kansas |
| SCG, The Select Carrier Group, L.P. | H | Kansas |
| EGL Eagle Global Logistics, LP | H | Oregon |
| SCG, The Select Carrier Group, L.P. | H | Oregon |
| EGL Eagle Global Logistics, LP | H | Pennsylvania |
| EGL Eagle Global Logistics, LP | H | South Carolina |
| SCG, The Select Carrier Group, L.P. | H | South Carolina |
| EGL Eagle Global Logistics, LP | H | Tennessee |
| SCG, The Select Carrier Group, L.P. | H | Tennessee |
| SCG, The Select Carrier Group, L.P. | H | Virginia |
| EGL Eagle Global Logistics, LP Docket MC386732-C | BMC34 | FMCSA |
| SCG, The Select Carrier Group, L.P. Docket MC472198-C | BMC34 | FMCSA |

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or
conditions of the Policy except as hereinbefore set forth.

50

ORIGINAL

Attached to and forming part of Policy No: **CSF00022USA1**
of the **National Liability & Fire Insurance Company**
issued to **EGL EAGLE GLOBAL LOGISTICS INC.**

STARR MARINE AGENCY OF CALIFORNIA

By _____

Date of Issuance: June 4th, 2007

Unofficial Copy Office of Chris Daniel District Clerk

ORIGINAL

## ENDORSEMENT NO. 2
## MULTI-YEAR AGREEMENT

1. Effective 4/1/07 it is understood and agreed that the cancellation clause in this policy is deleted and replaced by the provisions outlined below and in consideration of the agreed upon premium, this policy is written on multi-year policy term from 4/1/07 to 4/1/10 and may not be canceled by either party for any reason, except as indicated below;

a) By mutual agreement between the Assured and the Company or, if the Assured or the Company is sold to, or is not the surviving entity following a merger with, any other company or other entity, or if there is a material change in the Assured's or Company's ownership.

b) This policy may be cancelled by the Assured, upon written notice to the Company if:

1) The AM Best Claims Payment Rating of this Company falls below A-, or
2) The Company becomes insolvent, goes into liquidation, or bankruptcy, has a receiver appointed, or ceases to pay claims in the ordinary course of business, or
3) The Company merges or amalgamates with another company.

c) This policy may be cancelled by the Company, upon written notice to the Assured in the event of:

1) Non-payment of premium (10 days notice)
2) Any material increase in hazard within the knowledge and control of the Assured (30 days notice), or
3) Any material change in the Company's treaty reinsurance which directly impacts the Company's ability to honor its commitment under this policy, or
4) Any event which would permit cancellation under the terms and conditions of the S.R. & C.C. endorsement and/or the War Risk Open Policy.

2. In the event of cancellation, by either the Assured or the Company, the Company shall within thirty days after the effective date of such cancellation, refund the unearned premium, which shall be calculated on a pro rata basis without penalty.

3. Notwithstanding the above the Assured may cancel this policy at any time, if it agrees to pay to this Company 25% of the three year unearned premium as liquidated damages. Such cancellation to be effective 30 days from the date the Company receives written notice from the Assured of its intent to cancel the policy.

4. Premiums are flat annuals and can only be amended at the first and second policy year anniversary in the event that;

a) The actual sales for the first year or the second year, as the case may be, exceed the estimated sales (used to establish the premium for the first year or the second year, as the case may be) by more than 20%, in which case the flat annual premium for the second year or the third year, as the case may be, will be determined by applying the original sales rate for the first year or the second year, as the case may be, against the actual sales for the first year or the second year, as the case may be.  The Assured shall report actual sales for the first year or the second year, as the case may be, within 30 days following the first anniversary or the second anniversary, as the case may be, and calculation of additional premium, if any, to be applied to the flat annual premium

52

ORIGINAL

for the second year or the third year, as the case may be, will be completed within 60 days following the applicable anniversary date and payable within thirty days of the invoice date; or

b) The loss ratio for the first year or the second year, as the case may be, which will be calculated 60 days after the applicable anniversary date, exceeds 99%, in which case one of the following premium increases will be applicable and payable 30 days thereafter;

| | |
|---|---|
| 100% to 110% | 10% premium increase |
| 111% to 150% | 20% premium increase |
| 150% to 170% | 30% increase |
| 171% or greater | 50% (maximum) |

Loss Ratio, for these purposes, is defined as incurred losses, including all allocated fees and expenses, less proceeds from salvage and subrogation, divided by the total policy premium, for the applicable policy year, respectively, all as recorded in the records of this Company.

Any premium increase to be determined in this process shall be calculated against the finalized flat annual premium for the applicable year as determined in 4.a).

5. Notwithstanding anything to the contrary in provision 4, should it be determined that additional premium is due (based on revenues, 4.a) and additional premium is due (based on loss ratio, 4.b) in respect of the same underwriting year, then the Assured will only be required to pay the greater of the two additional premium calculations.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy except as hereinbefore set forth.

Attached to and forming part of Policy No: **CSF00022USA1**

of the **National Liability & Fire Insurance Company**

issued to  **EGL EAGLE GLOBAL LOGISTICS INC.**

**Starr Marine Agency of California**
**doing business in California as**
**Starr Marine of California Insurance Agency**

By _____

Date of Issuance: June 4th, 2007

Unofficial Copy Office of Harris District Clerk

53

# ENDORSEMENT No. 3 (Subrogation)

# ENDORSEMENT No. 4 (Section 1(a) Shippers Interest

Unofficial Copy Office of Chris Daniel District Clerk

**ORIGINAL**

## ENDORSEMENT NO. 3

Retroactively, to the inception date of this Policy [04/01/07], it is understood and agreed that clause 41, Subrogation, of Section I(a), Shippers Interest Insurance, is amended to read as follows:

### 41)  SUBROGATION

It is agreed that upon payment of any loss, the ASSURED shall assign and subrogate to this Company all their rights against carriers, bailees and other third parties to the extent of such payments and shall permit suit to be brought in the ASSURED's name (but at this Company's expense), and the ASSURED further agrees to render all reasonable assistance in the prosecution of said suit or suits.  Notwithstanding anything to the contrary, these ASSURERS will only initiate subrogation upon receipt of written permission, from the ASSURED to do so.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy except as hereinbefore set forth.

Attached to and forming part of Policy No: CSF00022USA1
of the **National Liability & Fire Insurance Company**
issued to **EGL EAGLE GLOBAL LOGISTICS INC.**

STARR MARINE AGENCY OF CALIFORNIA

By _J. Cochran_

Date of Issuance: 07/19/07

Unofficial Copy Office of Chris Daniel District

**ORIGINAL**

ENDORSEMENT NO. 4

**Effective Date: June 14, 2007**

Policy Declarations, Clause 8, Limits of Liability, reference to <u>Section I(a) Shippers Interest Insurance</u>:-

In consideration of additional premim of $27,300., the applicable Limit of $7,500,000. any one Certificate is increased to $18,000,000. for the shipment reflected in online Certificate number 485355001779 for the account of S & W ENERGY SOLUTIONS.

Each claim for loss or damage will be adjusted separately and from the amount of each separately adjusted claim the sum of $100,000. shall be deducted.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy except as hereinbefore set forth.

Attached to and forming part of Policy No: OSF00022USA1
of the **National Liability & Fire Insurance Company**
issued to **EGL EAGLE GLOBAL LOGISTICS INC.**

**STARR MARINE AGENCY OF CALIFORNIA**

By _J. T. Coolman_

Date of Issuance: 07/19/07

# ENDORSEMENT No. 8

## CANCELLATION ENDORSEMENT

Unofficial Copy Office of Chris Daniel District Clerk

ORIGINAL

ENDORSEMENT NO. 8

**Effective Date:  November 4, 2007**

At the Assured's request and by mutual agreement, and in consideration of pro rata return premium of $376,800., being pro rata of Q3 installment, this policy and its companion war policy [CSF00022USA1WR] are cancelled in respect of shipments dated on and after November 4, 2007, and in respect of static risks at 12:01 AM, Pacific Standard Time, November 4, 2007.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy except as hereinbefore set forth.

Attached to and forming part of Policy No: **CSF00022USA1** and **CSF00022USA1WR** of the **National Liability & Fire Insurance Company** issued to **EGL EAGLE GLOBAL LOGISTICS INC.**

STARR MARINE AGENCY OF CALIFORNIA

By

Date of Issuance: 11/1/07

Unofficial Copy Office of Chris Daniel District Clerk

2011-69838 / Court: 061

# Exhibit B

Unofficial Copy Office of Chris Daniel District Clerk

# APPLE'S STATEMENT OF WORK (SOW)

# FOR

# LATIN AMERICA FINISHED GOODS DISTRIBUTION

Unofficial Copy Office of Chris Daniel District Clerk

# STATEMENT OF WORK
## FOR
### Latin America finished goods distribution

This Statement of Work for Latin America finished goods Distribution ("SOW") is entered into by and between Apple Computer, Inc. ("Apple") and EGL Eagle Global Logistics, LP ("Supplier") and is effective as of May 15, 2004 ("Effective Date"). This SOW is governed by the Master Logistics Services Agreement ("Agreement" or "MLSA"), contract # CP2002544, dated December 12th, 2002 between Apple and Supplier, and shall remain in force until terminated pursuant to the Agreement or as specified herein.

This SOW describes the air services ("Services") that Supplier will provide on behalf of Apple and entities authorized by Apple in writing to receive the Services ("Authorized Entities"). This SOW specifically covers international airfreight shipments from the USA to Mexico and Latin America where Apple is responsible for freight payment. Unless otherwise defined below, the capitalized terms in this SOW will have the same meaning as defined in the Agreement.

This Statement of Work consists of the following Sections and Exhibits:

| | |
|---|---|
| Section 1: | Implementation Planning |
| Section 2: | Transportation Services |
| Section 3: | Information Services and Regional Specific Requirements |
| Section 4: | Reports and Metrics |
| Section 5: | Pricing |
| Section 6: | Country Requirements |
| Exhibit A: | Pricing |
| Exhibit B: | 214 Specifications |

Supplier is the entity that will be providing the services under this SOW and only the resources of the signing Supplier will be applied in the provision of the Services, except for the resources involving agreed-upon interlining service arrangements.

Signed:

**Apple Computer, Inc.**

SIGNATURE: _____

PRINTED NAME: _____

TITLE: _____

DATE: _____

**EGL Eagle Global Logistics, LP**

SIGNATURE: E. Joseph Bento

PRINTED NAME: E. JOSEPH BENTO

TITLE: PRESIDENT + CHIEF MARKETING OFFICER

DATE: 7/1/04

Unofficial Copy Office of Chris Daniel Office Clerk

**1.0    IMPLEMENTATION PLANNING**

**1.1    Phase I - Project Planning.**  Within one (1) week of executing this SOW, Supplier will prepare and submit to Apple, for Apple's approval, a detailed written project plan outlining all activities and steps necessary for the implementation of the requirements set forth in Sections 1.2 and 1.3.

**1.2    Phase II - Implementation**

**1.2.1**  Within the time period specified in the approved project plan, Supplier will complete the following milestones:

   (a)      develop an operating procedures manual that describes all the procedures Supplier will follow in providing the Services under this SOW;

   (b)      develop a schedule for implementing the on-line interfacing to the Apple's track and trace provider as required under Section 3; and

   (c)      develop a schedule for sending electronic invoices to Apple's freight payment provider under Section 3.

**1.2.2**  Within the time period specified in the approved project plan, Supplier will implement and follow all procedures as set forth therein, and fully deploy all agreed upon services.

**1.2.3**  Within the time period specified in the approved project plan for implementing online interfacing to Apple's track and trace provider, Supplier will achieve a fully operational and debugged implementation, and be fully operational with international transportation services for Apple.

**1.3    Project Plan Management**

**1.3.1**  Supplier and Apple will provide all materials, resources and personnel required to complete an on-time implementation that meets all the functional requirements in the project plan.

**1.3.2**  Apple and Supplier will provide each other the necessary technical information about their information systems reasonably required to complete the project plan.  All such information shall be Confidential Information subject to the obligations of the Agreement.

**1.3.3**  The persons responsible for managing the implementation of the operating plan for each party are as follows:

   Apple Americas (Elk Grove):      Jerry Lawrence     jerrylawrence@apple.com

   Supplier USA:                    Scott Steindorf    Scott.Steindorf@eaglegl.com

**1.3.4**  Supplier will conduct regular status reviews with Apple regarding implementation of the operating plan. Supplier and Apple will have a project manager and an information systems specialist at each meeting.

**1.3.5**  Any change in the scope of the operating plan must be approved by both parties in writing, unless otherwise expressly permitted by this SOW.

**1.3.6**  If there are any significant disagreements over the operating plan or its implementation that cannot be resolved at the weekly telephone status review, the managers named in Section 1.3.3, above, will escalate the matter to the senior executives of the parties who will meet and confer for the purpose of resolving any such issues.

**1.3.7**  Supplier failure to implement the operating plan according to the schedule in this Module will constitute a material breach within the meaning of Section 12.3.1(a) of the Agreement.

2.    **TRANSPORTATION SERVICES**

2.1    **General Requirements.**  Supplier will receive Products at Apple's designated locations ("Origin Points") as mutually agreed upon by Supplier and Apple. Apple may, in its sole discretion, specify additional Origin Points by giving notice in writing to Supplier.  Supplier will make any such additional Origin Points operational within thirty days of receiving notice from Apple.

Apple will authorize pick-up and payment for shipments for Supplier services. Apple will not issue purchase orders to Supplier under this SOW.

Apple or an Apple OEM or vendor is the shipper of record and Apple is the importer of record on shipments to distribution centers and subsidiaries.

AMERICAS Specific: Apple's designated Customs Broker will be an Also Notify Party on Supplier's Bill of Lading. Supplier will assist Apple's Customs Broker with pre-clearance by providing, if requested, pre-alert notification, on-board confirmation and scanned documents in advance of arrival of all Shipments. Apple's broker will coordinate the proper release notification with the Supplier to facilitate delivery from port of arrival to the Delivery Point, which is the responsibility of the Supplier.

2.2    **Contacts.**  Supplier will designate qualified Supplier employees who will act as Executive Sponsor and Account Manager, respectively, providing all services and support to Supplier's carriers that may be necessary to ensure that Supplier meets its obligations under the SOW.

|                    |                |
|--------------------|----------------|
| Executive Sponsor: | Scott Steindorf |
| Account Rep:       | Tracy Parish   |

2.3    **Receipt of Products.**  Apple or its OEM is responsible for the loading of all Products into the Supplier provided vehicles at the Origin Point. Supplier will sign off all bills of lading at the time of pick up as to confirmation (subject to shipper load and count when clearly noted on the bill of lading) and acceptance of load. Risk of loss or damage to Products will transfer to Supplier when Products are tendered to Supplier at the Origin Point in accordance with the terms of the Agreement and this SOW unless the parties agree otherwise in writing.

2.4    **Routing, Scheduling and Dispatching of Shipments.**  Supplier will communicate directly with shippers to coordinate and optimize shipments from the Origin Point.  Supplier will utilize its network to meet the transit time performance requirements of this SOW through the use of both commercial and dedicated services within the Supplier network.  Supplier will be responsible to determine the appropriate network model required to achieve the transit time performance requirements of this SOW.

Supplier is responsible to provide sufficient capacity and resources to meet Apple's ongoing needs under this SOW.  In this regard, Supplier may use interline and direct carriers with which they have written and signed agreements, but Supplier shall be responsible for such interline services as if Supplier provided same.

Supplier will route, schedule and dispatch the Products to carriers for transport from the Origin Points to the Delivery Points specified by Apple or Apple's OEM in the delivery instructions.  Supplier will be responsible for each Shipment in accordance with the terms of the Agreement and this SOW.

2.5    **Service Level Agreement.**  The service level requirement for this program is a minimum of 98% on-time performance.  Except as specified by Apple, Supplier agrees that pick up from each Origin Point will be subject to the terms and conditions of this SOW, that all Shipments will be delivered to the Delivery Point within the timeframe set forth in the transit commitments expressed in this SOW, provided Apple's consignee is at the Delivery Point to accept delivery (unless Apple expressly authorized unattended delivery) and is willing to accept delivery within such timeframe.

2.5.1    **Performance Metric.** Performance will be measured against the Transit Matrices specified in Section 6. In some cases, pickups may required at each Origin Point as follows:

**Quarter-end:** up to 23:59 on the last Friday and Saturday of Apple's fiscal quarter.

**Month-end:** up to 23:59 on the last Saturday of the fiscal month.

**Sunday / Holiday Service:** Sunday and holiday pickups and deliveries are not standard service although they may be required. Supplier will support Apple's requirements when this service is required.

**2.5.2   On-time Exceptions.** Shipments that are not delivered on-time for the following reasons will be excepted from the on-time performance calculation:

- weather delay, beyond carrier control
- force majeure conditions (as defined in the Agreement)
- refused shipment by Delivery Point
- consignee requires an appointment for delivery, provided the shipment was available to be delivered within the agreed transit metric.

**2.6   Delivery.** With Apple's necessary cooperation, Supplier will process, manage, and resolve all problem Shipments, including but not limited to:

(a)   **Unattended Deliveries.** Supplier will not permit unattended deliveries without Apple's express written instruction and authorization. All shipments require a legible adult signature.

(b)   **Partial or Short-Delivered Shipments.** Supplier will notify Apple of any partial or short-delivered Shipments and provide Apple with a Corrective Action Plan for the Shipment within twenty-four hours after Supplier receives notice thereof. Supplier will reimburse Apple for Lost Product, Product Damage, or Package Damage as set forth in the Agreement and this SOW.

(c)   **Shipments in Distress.** Supplier will assist Apple with any requests to change a shipment in transit, including within reason, any request to reschedule shipment or delivery, change carriers or change delivery instructions.

(d)   **Refused Shipments.** Upon receipt of a refused shipment, Supplier will contact Apple's sales support department for instructions.

(e)   **Shipment Inquiries.** Supplier will promptly research and respond to Apple's shipment inquiries, including, without limitation, requests for proof of delivery (POD), delivery signature verification, delivery discrepancy resolution, shipment location and in-transit information.

**2.7   Shipment Tracking.** Supplier will provide track and trace information for all Shipments transported under this SOW to Apple and Apple's track and trace provider, allowing real time visibility to Product as it moves through each node of the transit network, in a manner and format acceptable to Apple as set forth in Section 3.

**2.8   Supplier Support Personnel.** Supplier will be responsible for coordinating all receipt of Products and routing, scheduling and dispatching of Shipments to the Delivery Points. Supplier will help to resolve and coordinate resolution of any issues raised after normal working hours. The current operations managers for each party are as follows:

| | | |
|---|---|---|
| Apple Americas: | Fred Lopez | flopez@apple.com |
| Supplier USA: | Tracy Parish | mladen.vuclcevic@expeditors.com |
| Supplier Brazil: | Dulce Alves | dulce.alves@eaglegl.com |
| Supplier Mexico: | Manny Velasquez | Manny.Velasquez@eaglegl.com |

Supplier will provide a centralized point of contact in the USA for customer service inquiries from Apple.

The name and location of the centralized function will be designated during implementation.

2.9    **Origin Points.** The following is a list of Origin Points:

          Apple Sacramento
          2911 Laguna Blvd.
          Elk Grove, CA

          Apple Miami
          Coral Gables, FL

2.10   **Billing and Payment Terms.** Supplier will invoice Apple electronically as specified in Section 3.2. Payment terms are as specified in the Agreement.

3.      **INFORMATION SERVICES and SPECIFIC REGIONAL REQUIREMENTS**

3.1    **EDI Communication Agreement.** Apple has contracted with BridgePoint, Inc. to provide a worldwide, internet based, electronic exchange of logistics information. Global Track & Trace (GT&T) provides Apple with full visibility to every line item of every shipment without exception. GT&T data allows Apple to closely manage its supply chain and measure trading partner performance. Suppliers are required to submit all shipment statuses electronically using the EDI 214 standard. Files will be sent via secure FTP or VAN. Apple will establish data transmission schedules that may require data transmission in real time or near real time. Apple will require all Supplier shipment statuses to be transmitted to our GT&T provider. Apple, in agreement with the Supplier, will assign the appropriate 214 code to the Supplier events. Apple may require some or all of the following statuses to be provided:

-    picked up
-    loaded on truck
-    arrived Customs
-    cleared Customs
-    delivered to connecting line
-    arrive terminal
-    depart terminal
-    out for delivery
-    delivered (POD including name)
-    delivery not complete
-    shipment delay
-    shipment damaged

The complete 214 spec is attached as Exhibit B.

Supplier will provide a resource to facilitate management of all data exceptions as and when they occur. Supplier will further supply a tool to track all issues raised, through to resolution, and provide this visibility to Apple. Supplier agrees that Apple may, upon thirty days written notice, require Supplier to provide the information required under this section to a different third party track and trace system provider. Supplier will provide industry standard transaction sets to Apple's third party, unless otherwise agreed by Apple's t    h    i    r    d                   p    a    r    t    y    .

3.2    **Electronic Billing.** Apple utilizes the services of a third party freight payment vendor, Trax Technologies, for audit and approval of all freight and duty. Apple shall have the right to change the freight payment vendor at any time. Supplier will be required to submit invoices electronically, via a secure FTP site that will be provided upon implementation, directly to Apple's designated freight payment vendor. Apple will establish data transmission schedules that may require data transmission in real time or near real time. Supplier, Apple and the freight payment provider will work to set up rules that will be used to automate payment to Supplier for services rendered. The overall process to set up freight payment is 3-5 weeks. Supplier will provide all necessary business IT resources to support all project phases – design, test and implementation. Supplier will make best efforts to complete testing and participate fully in electronic invoicing within sixty days of commencing services. Any expense on the part of Supplier is considered a cost of doing business with Apple.

3.3 **Mexico Invoices.** Invoices for Mexico shipments must be billed to Apple Mexico, not Trax USA.

4. **REPORTS, METRICS AND PERFORMANCE REQUIREMENTS**

4.1 **Reports.** Supplier shall provide the following reports to Apple in a mutually agreed upon format according to the following schedule. If agreed to by Apple, Apple will access the Supplier website for the weekly and daily reports it requires.

| REPORT | FREQUENCY |
|--------|-----------|
| Total Shipments by Service Level & Lane (Origin & Destination, City & Country) | M, Q, A |
| Total Kilos by Service Level & Lane (Origin & Destination, City & Country) | M, Q, A |
| Total Cost by Service Level & Lane (Origin & Destination, City & Country) | M, Q, A |
| Average Cost per Shipment By Service Level & Lane (Origin & Destination, City & Country) | M, A |
| Average Shipment Weight By Service Level & Lane (Origin & Destination, City & Country) | M, A |
| Claims Activity: Damaged Shipments and Units, Lost Shipments and Units | M, Q, A |
| Problem Shipments: Customer complaints, expected delays, quality issues | D, M, Q, A |

D: Data and information regarding daily activities prepared and available at the beginning of the following business day.

W: Data and information regarding activities of the previous week prepared and available by Tuesday of the following week.

M: Data and information regarding activities of the previous Apple fiscal month, prepared and available by the second Tuesday of the following Apple fiscal month.

Q: Data and information regarding activities in the previous Apple fiscal quarter, detailed by month, in a trending analysis, prepared and available by the second Tuesday of the first month after the end of each fiscal quarter.

A: Data and information regarding activities in the previous Apple fiscal year, representing annual data, detailed by quarter, in a trending analysis, prepared and available by the second Tuesday of the first month after the end of Apple's fiscal year end.

4.2 **Transit Performance Metrics.** In addition to its obligations under Section 3, Supplier will report track and trace data from its system to Apple. Supplier will maintain the accuracy of the data and use best efforts to maintain 100% accuracy.

4.3 **Critical Metrics.** Supplier will measure and report its performance against the following Critical Metrics as set forth below. Without limiting any other remedies available to Apple under the Agreement, this SOW or at law, if Supplier fails to meet a Critical Metric, Supplier will be liable for the payments, credits or discounts as set forth below.

4.3.1 **On-Time Shipment.**

a. **Metric.** Supplier will measure and report the percentage of cartons that arrive at the Delivery Point or made available for delivery by the guaranteed delivery date set forth in Transit Matrices as follows:

% on-time = Total # of on time deliveries
                 Total # of deliveries handled

**b.** **Reports.** Supplier shall provide the following reports to Apple in a mutually agreed upon format according to the following schedule.

| REPORT | FREQUENCY* |
|---|---|
| Number of Shipments Delivered On Time | W, M, Q |
| Number of Shipments Delivered Late | W, M, Q |
| Number of Shipments Delivered Late By State or Zip Code | W, M, Q |
| Number of Shipments Delivered Late By Reason | W, M, Q |
| Percent of Shipments On Time | W, M, Q |
| Percent Late for any Reason (Cycle Time) | W, M, Q |
| Percent Late by Reason Considered within Supplier Control | W, M, Q |
| * As defined in Section 4.1, above. | |

**c.** **Performance Requirements.** If Supplier is below 98% on time performance for the quarter as calculated by Apple, then Supplier shall pay Apple a 1% refund of the total freight charges in the quarter. If Supplier is below 95% on time performance for the quarter as calculated by Apple, then Supplier shall pay Apple a 2% refund of the total freight charges in the quarter. This payment shall be made within 30 days after close of the relevant quarter. Except for payments for Lost Product, Product Damage, or Package Damage, this payment shall constitute Supplier's sole liability for shipments that are not delivered on time.

**4.3.2** **Proof Of Delivery.**

**a.** **Metric.** Apple will measure the number of days Supplier takes to respond to Apple's request for hard copy documentation proving that a Product was delivered to the Delivery Point by Supplier ("POD" with visible signature). Within each time period below, Supplier must provide at least the stated percentage of requested PODs:

| DAYS FOLLOWING APPLE REQUEST | % PROVIDED APPLE |
|---|---|
| Within 24 hours | 90% |
| Within 48 hours | 95% |
| Within 72 hours | 100% |

**b.** **Reports.** Supplier shall provide the following reports to Apple in a mutually agreed upon format according to the following schedule:

| POD REQUEST REPORT | FREQUENCY* |
|---|---|
| Number of POD's requested by Suppliers Response Time in Days | M, Q, A |
| * As defined in Section 4.1, above. | |

**c.** **Performance Requirements.** If Supplier does not produce a requested POD, or produce evidence that the shipment was not tendered, within thirty days from the date of Apple's request, Supplier will automatically convert the POD to a claim according to a mutually agreed process. Supplier's failure to provide actual hard copy documentation shall not bar Supplier from proving delivery by other available means, so long as Apple and the affected Apple consignee accept these means.

**4.3.3**   **Lost Product and Product Damage.**

a. **Metric.** Apple will measure the percentage of Lost Product and Product Damage. Such percentage must not exceed .02%, measured as follows:

% Lost or damaged = $\dfrac{\text{Total cartons lost or damaged during the quarter}}{\text{Total cartons handled during the quarter}}$

b. **Reports.** Supplier shall provide the following reports to Apple in a mutually agreed upon format according to the following schedule:

| REPORT | FREQUENCY* |
|---|---|
| Total Number of Claims Filed | M, Q |
| Total Dollar Value of Claims | M, Q |
| Average Number of Days to Resolve | M, Q |
| Claims by Lane (Origin & Destination, City & Country) | M, Q |
| * As defined in Section 4.1 above. | |

c. **Performance Requirements.** Supplier shall pay Apple for all claims for Lost Product or Product Damage within 30 days of the date of the filed claims. In the event that Apple does not opt for Full Replacement Cost coverage for the particular Products that are lost or damaged, Supplier shall make the following payments to Apple for Lost Product or Product Damage:

| Supplier Loss Ratio in Prior Quarter | Payment |
|---|---|
| 0.02% or less | USD $20.00 per kilo* |
| >0.02% and ≤ 0.04% | USD $40.00 per kilo* |
| >0.04% and ≤ 0.08% | USD $80.00 per kilo* |
| >0.08% | USD $160.00 per kilo* |
| * or actual invoice value, whichever is less | |

**4.3.4**   **Package Damage**

a. **Metric.** Apple will measure the Package Damage for Products delivered to the Delivery Point. The percentage of such claims must not exceed 0.02%, measured as follows:

% Damages = $\dfrac{\text{\# of damaged cartons}}{\text{\# of cartons handled}}$

b. **Reports.** Supplier shall provide the following reports to Apple in a mutually agreed upon format according to the following schedule:

| REPORT | FREQUENCY* |
|---|---|
| Country/Customer Specific | D (Upon Occurrence) |
| Total Number of Claims Filed | W, M, Q |
| * As defined in Section 4.1 above. | |

c. **Performance Requirements.** In the case of finished goods, Supplier shall pay Apple for all

Package Damage at $67.50 per unit or actual re-boxing, shipment and handling charges, whichever is lower. If a specific reboxing agreement is made and reboxing services are provided at Supplier's cost then the package damage fee is waived.

5.   PRICING

5.1   **General.** Apple will not accept any charges other than those stated in Exhibit A. Supplier agrees that it is aware of current and forecasted market costs, including but not limited to fuel, security, and labor, and that rates offered herein have taken all costs into consideration. Pricing quoted herein must remain in effect until the next review period as outlined in Section 5.2 below.

5.2   **Pricing Reviews.** The parties will meet to review the pricing of the Services provided under this SOW one year after the Effective Date.   The parties will meet on a mutually agreed date once per year thereafter to review pricing and assess market demand and conditions. During each such review, the parties may agree to increase or decrease the price of any Service. Any increase will only be accepted after documented evidence   that   Supplier's   cost   structure   has   changed   significantly.

5.3   **Cost Reduction Efforts.** On a quarterly basis, Supplier will present to Apple process improvement initiatives that will lead to reduction in the overall cost of transportation to Apple.  Such initiatives should include opportunities in processes for which Supplier is solely responsible as well as those of shared responsibility between Apple and Supplier. The quarterly presentation should include new initiatives as well   as   reporting   on   the   progress   of   ongoing   initiatives.

5.4   **Start-Up Cost.**   Apple will not pay any Start-Up Costs pursuant to this SOW.

5.5   **Information Services Cost.** Apple will not pay any Information Services Costs for the Services provided by Supplier defined in Section 1. Supplier will be responsible for the costs of sending Supplier data to Apple's designated third parties. Apple will be responsible for costs incurred only when Apple sends and receives data from an Apple designated third party. Apple will entertain cost sharing, on an ad-hoc basis, in those instances where Apple OEM's require systems interface programs.

5.6  **Full Replacement Cost Coverage.** Apple may opt for Full Replacement Cost coverage for the Products covered under this SOW, on a shipment by shipment basis. The cost of such coverage is listed in the pricing matrices. Apple understands that insurance charges are normally expressed as a percentage of the declared value per shipment, however, Apple requires its Suppliers to make the necessary calculations so that the insurance costs to Apple are expressed in dollars per kilo.

5.7   **Dimensional Charge Policy.** Apple will pay the greater of dimensional or actual weight based on the f o l l o w i n g   c a l c u l a t i o n :

| Mode | Formula | Comment |
|---|---|---|
| USA Air | (L"xW"xH") / 194 = Dimensional Lbs. | Round up to nearest Lb. |
| International Air | (L"xW"xH") / 166 = Dimensional Lbs. | Round up to nearest .5 Kg |
| | (L"xW"xH") / 366 = Dimensional Kgs. | |
| | (L$^{cm}$ x W$^{cm}$ x H$^{cm}$)/6000 = Dimensional Kgs. | |
| LCL | L" x W" x H" = Cubic Meters | Round up to nearest whole cubic meter |

5.7.1   Apple will include the skid in dimensional calculations if cargo is tendered on skids, unless it is on skids only for Suppliers convenience.

5.7.2   If freight is tendered on skids, the dimensional calculations will be based on the dimensions of each entire skid.

5.7.3   If freight is not tendered on skids, the dimensional calculations will be based on the dimensions of each carton.

5.7.4   For ground service transportation, or USA domestic parcel, Apple will not pay dimensional or volume

Apple-Eagle SOW – Lst Am. 3/24/04                    Confidential                                  p. Q

unofficial work

weight charges.

**6.0** **Country Requirements.** Lane specific shipment profiles will be provided separately, and are not committed volumes for the lanes.

**6.1** *Brazil-Bound Shipments.* Supplier shall provide the following services for Apple:

**6.1.1** Supplier will collect Product from Apple Elk Grove once per week on Thursday. Occasionally, service may be required on additional days and Apple will liaise with Supplier accordingly. In general, Apple requires a 3-4 day door-to-door service.

**6.1.2** Apple's commercial invoices will state a HAWB# pre-assigned by Supplier. One HAWB# will be assigned to each commercial invoice and commercial invoices should never be combined under one HAWB# unless instructed by Apple. HAWB's will be consolidated under one MAWB whenever possible. Shipments must be sent directly to Apple's designated customs bonded warehouse in Vitoria, where the Shipments will clear Customs.

**6.1.3** All Shipments indicating 'Ship-to Apple Brazil' on the Commercial Invoice should be delivered to Apple Brazil c/o the following customs bonded warehouse address

> COIMEX ARMAZÉNS GERAIS
> Estrada do Contorno, s/nº - CEP: 29148-680
> Porto do Engenho - Cariacica
> Espírito Santo

**6.1.4** Supplier will scan copies of HAWBs and commercial invoices and send by email with pre-alert information to Apple Brazil by 10:00 pm local time on date of pickup.

**6.1.5** Supplier will deliver palletized Product @ Apple's designated customs bonded warehouse in Vitoria within the agreed transit metric or, in the case of flights arriving after Monday 12:00, within 5 business hours after flight arrival.

**6.1.6** Total transit time door-to-door (Apple Elk Grove to customs bonded warehouse) is outlined in the table below:

| Pickup Day | Local time Elk Grove | Deliver to Customs-bonded warehouse in Vitoria by | Local time Brazil |
|---|---|---|---|
| Thursday | 18:00 | Monday | 17:00 |

**6.2** *Mexico-Bound Shipments:* Supplier shall provide the following services for Apple:

**6.2.1** Supplier will collect Product from Apple Elk Grove once per week, or as otherwise arranged by Apple.

**6.2.2** All shipments picked up on the same day before the established cut-off should be combined under one HAWB.

**6.2.3** Apple Mexico is the Importer of Record for all finished goods shipments.

**6.2.4** Supplier at origin will scan copies of HAWB and commercial invoices and send by email to Apple Mexico and Supplier destination office by 10:00 local time the day after pickup.

**6.2.5** A rolling daily status report will be provided to Apple by 12:00 noon local time.

**6.2.6** Supplier will turn over original documents to Apple's designated customs broker within 2 business hours after flight arrival.

6.2.7 Total transit time door-to-door  (Apple Elk Grove to Customer Door) is outlined in the table below. Customs brokerage and appointment delays are excluded from the transit calculation. The following milestones must be reported by Supplier on the daily report. The **bold** events will be calculated as total transit time for purposes of measuring Supplier's on-time delivery. The unbold events will not be calculated in the measurement of Supplier's overall transit time.

| START | END |
|---|---|
| *Pickup in Elk Grove* | *Receipt of Documents by Broker* |
| ← Customs Brokerage Process → | |
| *Customs Cleared* | *Available for Delivery* |
| Available for Delivery | Appointment |
| *Supplier Warehouse* | *Delivered to Customer (FOB)* |

The following example illustrates best case scenario where Shipment clears customs without delay, and appointments are made for delivery on the day after customs release.

| Pickup Day | Local SMF time | Shipment Clears Customs by | Local MEX time | Delivery to Customer by | Local MEX time |
|---|---|---|---|---|---|
| Monday | 18:00 | Wednesday | 12:00 | Thursday | 18:00 |
| Tuesday | 18:00 | Thursday | 12:00 | Friday | 18:00 |
| Wednesday | 18:00 | Friday | 12:00 | Monday | 18:00 |
| Thursday | 18:00 | Monday | 12:00 | Monday | 18:00 |
| Friday | 18:00 | Tuesday | 12:00 | Tuesday | 18:00 |
| Saturday | As arranged | Tuesday | 12:00 | Wednesday | 18:00 |
| Sunday | As arranged | Wednesday | 12:00 | Thursday | 18:00 |

6.2.8 The application of labels to some or all cartons in-country may be required of Supplier prior to delivery to end customer. This requirement is necessary to comply with various government regulations (NOM, NYSE, import regulations, etc). This process would take place at the airport or Supplier warehouse prior to delivery to end customer.

6.2.9 Apple may require Supplier to provide short term storage in a secure warehouse within Mexico City.

6.2.10 Apple requires security escort of all finished goods deliveries to end customer.

6.3 *Other Latin America:*

6.3.1 Occasionally Shipments will be drop-shipped from Apple to Supplier in Miami bound for destinations in Latin America. Supplier should notify Apple for shipping instructions when a Shipment is received.

6.3.2 Commercial invoices for these Shipments will be prepared by Supplier from the instructions received by Apple. A copy of the completed commercial invoice and HAWB should be sent to Apple prior to export.

EXHIBIT A
PRICING

A.1     LATAM Pricing Matrics

| Origin | Destination | D-T-A Rate per Kilo | D-T-D Rate per Kilo | D-T-D Rate w/escort | D-T-D Rate with Brokerage | D-T-D Rate w/ Escort and Brokerage | D-T-D w/insurance excluding Escort and Brokerage | Transit days |
|---|---|---|---|---|---|---|---|---|
| Elk Grove, CA | Mexico City, MX | $1.60 | $1.87 | $1.99 | $2.40 | $2.52 | $2.20 | 2-3 |
| Elk Grove, CA | Vitoria, BR Via LAX, (p/u Thu) | $3.02 | $3.10 | N/A | N/A | N/A | $3.43 | 3-4 |
| Elk Grove, CA | Monterrey, MX Via MEX | $2.45 | $2.70 | $2.91 | $3.23 | $3.41 | $3.03 | 3-4 |
| Miami, FL | Vitoria, BR | $3.02 | $3.10 | N/A | N/A | N/A | $3.43 | 1-2 |
| Miami, FL | Mexico City, MX | $1.15 | $1.37 | $1.49 | $1.90 | $2.02 | $1.70 | 2-3 |

- Brokerage fee: $0.53/kilo
- escort: $0.12/kilo
- insurance: $0.33/kilo
- labor fee per hour $15 per man/hour
- Waiting time over five hours (09:00-18:00): US$45 per hour
- Commercial Invoice preparation: USD 20 per invoice
- Warehouse Return: US$ 25 flat
- Storage at Supplier Warehouse (first 15 days free): US$1.10 per carton
- Labeling:  USD $0.075 per label

- MEXICO Notes:
  - Door to Door ("DTD") rates include, transportation, document transfers, warehousing for 15 days handling at customs compound, and delivery to end customer; excludes brokerage fees and security charges.
  - If Door to Airport ("DTA") service is requested, Supplier will charge the DTA rate above, and Supplier's loss and damage liability will end upon freight turnover to destination delivery agent or broker in Mexico.
  - If DTD service is requested, Supplier will charge the DTD rate. Supplier's liability ends upon clean receipt at consignees' addresses.
- VITORIA Notes:
  - DTD rates include transportation, and delivery to a bonded warehouse in VIX; excludes brokerage fees, customs fees, and security charges.

CONFIRMED FILE DATE: 3/13/2012

Case No. 201169838

EGL EAGLE GLOBAL LOGISTICS LP

vs.

NATIONAL LIABILITY & FIRE INSU

\* IN THE DISTRICT COURT OF

\* HARRIS COUNTY, TEXAS

\*

\* 61st    JUDICIAL DISTRICT

## NOTICE OF INTENT TO DISMISS - NO ANSWER FILED

To All Counsel and Pro Se Parties:

Court records indicate that this case is eligible for dismissal for want of prosecution because no answer has been filed in this case.   The case will be **DISMISSED FOR WANT OF PROSECUTION**, unless one of the following actions is taken by **05-21-2012**.

1. You file and have heard, by oral hearing or written submission, a meritorious motion for default judgment (addition instructions on the back); or,

2. An answer is filed; or,

If neither of the above has been done, then you must file a verified motion to retain, showing good cause to retain the case or diligence in prosecution to avoid dismissal, and appear at the oral hearing, to be held at the Harris County Civil Courthouse, 201 Caroline, Houston, Texas 77002, on **05-29-2012** at **09:00 AM**.

If you file a verified motion to retain, you must appear for the oral hearing **unless** otherwise advised. Failure to appear at the oral hearing will result in the **case being DISMISSED FOR WANT OF PROSECUTION**. If you have any questions regarding this notice, please contact the court coordinator, DARLA COONS at (713) 368-6076.

Thank you for your prompt attention to this matter.

ALFRED H. BENNETT
Judge, 61ST DISTRICT COURT
Generated on: 03/13/2012

RICKY H. ROSENBLUM
300 CONVENT ST 1600
SAN ANTONI, TX  78205

17276100



JCVF6A
rev.101706

## NOTICE REGARDING NON-MILITARY AFFIDAVIT

If you file a Motion for Default Judgment, you must comply with the requirements of 50 U.S.C. App. §521, Section 201.

The requirements for the non-military affidavit are now more detailed.

You are required to state facts to support whatever you assert in the affidavit.

**READ THE FEDERAL STATUTE.**

A non-complying Motion for Default Judgment will not be granted and will not be sufficient to avoid dismissal for want of prosecution.

**HCDistrictclerk.com**     EGL EAGLE GLOBAL LOGISTICS LP vs. NATIONAL     3/30/2012
LIABILITY & FIRE INSURANCE COMPANY
Cause: 201169838     CDI: 7     Court: 061

## APPEALS
No Appeals found.

## COST STATMENTS
No Cost Statments found.

## TRANSFERS
No Transfers found.

## POST TRIAL WRITS
No Post Trial Writs found.

## ABSTRACTS
No Abstracts found.

## DOCUMENTS
Proper credentials required. Please login or contact Harris County District Clerk's Office at (713) 755-7300.

## SUMMARY

### CASE DETAILS

| | |
|---|---|
| **File Date** | 11/17/2011 |
| **Case (Cause) Location** | Civil Intake 1st Floor |
| **Case (Cause) Status** | Active - Civil |
| **Case (Cause) Type** | BREACH OF CONTRACT |
| **Next/Last Setting Date** | 5/29/2012 |

### COURT DETAILS

| | |
|---|---|
| **Court** | 061st |
| **Address** | 201 CAROLINE (Floor: 9) HOUSTON, TX 77002 Phone:7133686070 |
| **JudgeName** | ALFRED H. BENNETT |
| **Court Type** | Civil |

## ACTIVE PARTIES

| Name | Type | Post Jdgm | Attorney |
|---|---|---|---|
| EGL EAGLE GLOBAL LOGISTICS LP | PLAINTIFF - CIVIL | | ROSENBLUM, RICKY H. |
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY | DEFENDANT - CIVIL | | |
| CEVA FREIGHT LLC | PLAINTIFF - CIVIL | | ROSENBLUM, RICKY H. |
| STARR MARINE OF CALIFORNIA | DEFENDANT - CIVIL | | |

INSURANCE
AGENCY

STARR MARINE REGISTERED AGENT
OF
CALIFORNIA
INSURANCE
AGENCY (A
CALIFORNIA
CORPORATION)

NATIONAL          REGISTERED AGENT
LIABILITY &
FIRE
INSURANCE
COMPANY (A
NEBRASKA
CORPORATION)

## INACTIVE PARTIES
No inactive parties found.

## JUDGMENT/EVENTS

| Date | Description | Order Signed | Post Jdgm | Pgs | Attorney |
|------|-------------|--------------|-----------|-----|----------|
| 11/17/2011 | ORIGINAL PETITION | | | 0 | ROSENBLUM, RICKY H. |
| 11/17/2011 | ORIGINAL PETITION | | | 0 | ROSENBLUM, RICKY H. |

## SETTINGS

| Date | Court Post Jdgm | Docket Type | Reason | Results | Comments | Defendant |
|------|-----------------|-------------|--------|---------|----------|-----------|
| 5/29/2012 09:00 AM | 061 | Another Docket | DISMISS FOR WANT OF PROSECU-MTN TO (TRCP 165A) | | | |

## SERVICE

| Type | Status | Instrument | Person | Requested | Issued | Served | Returned | Received | Tracking | Delive To |
|------|--------|------------|--------|-----------|--------|--------|----------|----------|----------|-----------|
| CITATION CORPORATE | SERVICE ISSUED / IN POSSESSION OF SERVING AGENCY | ORIGINAL PETITION | STARR MARINE OF CALIFORNIA INSURANCE AGENCY (A CALIFORNIA CORPORATION) BY SERVING ITS REGISTERED AGENT C T CORPORATION SYSTEM | 3/14/2012 | 3/16/2012 | | | | 72762341 | CIV AGCY-CIVILIA1 SERVICE AGENCY |
| CITATION CORPORATE | SERVICE ISSUED / IN POSSESSION OF SERVING AGENCY | ORIGINAL PETITION | NATIONAL LIABILITY & FIRE INSURANCE COMPANY (A NEBRASKA CORPORATION) BY SERVING THEIR ATTORNEY FOR SERVICE | 3/14/2012 | 3/16/2012 | | | | 72762344 | CIV AGCY-CIVILIA1 SERVICE AGENCY |

Case 4:12-cv-01000   Document 1   Filed in TXSD on 04/02/12   Page 100 of 102

WILLIAM T
ELLIS JR

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **EGL, EAGLE GLOBAL LOGISTICS, LP and CEVA FREIGHT LLC,** | § § § | |
| **Plaintiffs** | § | |
| | § | |
| **V.** | § | **C.A. NO. _____** |
| | § | |
| **NATIONAL LIABILITY & FIRE INSURANCE COMPANY and STARR MARINE OF CALIFORNIA INSURANCE AGENCY,** | § § § § § | |
| **Defendants** | § | |

## LIST OF ALL COUNSEL OF RECORD

1.  Rick H. Rosenblum, Esq.
    Andrew R. Casillas, Esq.
    AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
    300 Convent Street, Suite 1600
    San Antonio, Texas 78205
    Telephone:    210/281-7000
    Telefax:        210/224-2035

    ATTORNEY FOR PLAINTIFFS:
    EGL, EAGLE GLOBAL LOGISTICS, LP
    CEVA FREIGHT LLC

2.  Steven P. Vangel, Esq.
    Robert G. Moll, Esq.
    HILL RIVKINS LLP
    55 Waugh Drive, Suite 1200
    Houston, Texas 77007
    Telephone:    713/457-2286
    Telefax:        713/222-1359

    ATTORNEY FOR DEFENDANTS:
    NATIONAL LIABILITY & FIRE INSURANCE COMPANY
    STARR MARINE OF CALIFORNIA INSURANCE AGENCY

Respectfully submitted,

STEVEN P. VANGEL
SDTX I.D. No. 4065
Texas Bar No. 20465800
ROBERT G. MOLL
SDTX I.D. No. 15213
Texas Bar No. 00784622
HILL RIVKINS LLP
55 Waugh Drive, Suite 1200
Houston, Texas 77007
Telephone:    713/457-2286
Telefax:        713/222-1359

ATTORNEYS FOR DEFENDANTS
NATIONAL LIABILITY & FIRE
INSURANCE COMPANY and STARR
MARINE OF CALIFORNIA INSURANCE
AGENCY

## Certificate of Service

On this 2nd day of April, 2012, a true and correct copy of the foregoing was duly served by certified mail, return receipt requested, to Rick H. Rosenblum, Esq. and Andrew R. Casillas, Esq., AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., 300 Convent Street, Suite 1600, San Antonio, Texas 78205.